ROBERTS COTTON OIL COMPANY *v.* F. E. MORSE & COMPANY.

Opinion delivered February 13, 1911.

1. BANKRUPTCY ACT—EFFECT UPON STATE LEGISLATION.—The Federal bankruptcy act does not repeal or abrogate State laws in conflict with it, but supersedes and suspends their operation for the time being upon persons or cases within the purview of its provisions. (Page 519.)

2. BANKRUPTCY—ACT OF BANKRUPTCY.—The appointment by a State court of a receiver for an insolvent domestic corporation was an act of bankruptcy, within Bankr. Act July 1, 1898, c. 541, § 3a, 30 Stat. 546, which could have been taken advantage of by the creditors of the company by involuntary proceedings at any time within four months thereafter. (Page 520.)

3. SAME—JURISDICTION OF STATE COURT.—A chancery court of the State had jurisdiction in 1909, upon the application of a stockholder alleging its insolvency, to place a corporation in the hands of a receiver for the purpose of collecting and preserving the estate and protecting the creditors, etc.; and while its orders therein might be voidable by a trustee in bankruptcy subsequently appointed, they would not be void upon a collateral attack by a stranger. (Page 520.)

4. SAME—EFFECT UPON INSOLVENCY PROCEEDING.—Involuntary bankruptcy proceedings against an insolvent corporation within four months of the appointment of a receiver of the corporation by a State court terminates its jurisdiction, and the State court is required to transfer the assets, settle the accounts of its receiver and close its connection with the matter. (Page 521.)

5. SAME—VALIDITY OF ASSIGNMENT OF CONTRACT BY RECEIVER.—Where the act of a receiver of a State court in assigning a contract of the insolvent was subsequently approved by the bankruptcy court, after the proceedings in the State court were superseded by involuntary bankruptcy proceedings, the assignment was validated, and the assignee was entitled to enforce the contract. (Page 521.)

6. SALES OF CHATTELS—EFFECT OF VENDEE'S INSOLVENCY.—A vendor has no right, by reason of the insolvency of his vendee, to declare the contract of sale broken and to refuse to perform it. (Page 522.)

7.  SAME—ASSIGNMENT.—A contract for the sale of chattels which involves no personal relation of confidence between the parties, and no exercise of personal skill or science, may be assigned. (Page 522.)

8.  SAME—DAMAGES—NECESSITY OF TENDER OF PURCHASE MONEY.—A vendee is entitled to recover damages for the vendor's failure to perform the contract, without tendering the purchase money, if the vendor has repudiated the contract and refused to perform it. (Page 522.)

Appeal from Pulaski Circuit Court, Second Division; *F. Guy Fulk,* Judge; affirmed.

### STATEMENT BY THE COURT.

This suit was brought by appellee to recover damages for breach of a contract of sale of cotton seed meal, for delivery in October and November, 1909, to T. H. Bunch Company. It was alleged that the contract was made by appellant with said T. H. Bunch Company, which was, at the suit of a stockholder to wind up the affairs of said concern as an insolvent corporation, placed in the hands of receivers on the 17th day of September, 1909, by the Pulaski Chancery Court, with authority to dispose of all its assets; that appellee purchased said contract from said receivers at a sale duly made by order of said chancery court, paying a valuable consideration therefor, and same was duly transferred and assigned to appellee; that appellant refused and failed to perform said contract and ship and deliver the meal thereunder upon demand of appellee, to its damage in the sum of $1,500.

Appellant admitted making the contract of sale to T. H. Bunch Company at the price specified, the appointment of receivers by the Pulaski Chancery Court to take charge and dispose of the assets of said company as alleged, but stated "that said order was made without authority of law and void;" alleged that, immediately upon ascertaining that receivers had been appointed for said T. H. Bunch Company on September 18, 1909, it notified said company and the receivers that it cancelled any and all contracts and obligations it had or may have had with said company; that when the business of said T. H. Bunch Company was placed in the hands of receivers as aforesaid, its contract for the sale of said cotton seed meal was thereby cancelled and annulled; denied that appellee purchased the contract in October, 1909, for value; denied that it was bound by said contract of

that time; stated that it had, prior thereto, cancelled the contract, and that it was annulled by the placing of said Bunch Company, insolvent, in the hands of receivers; denied the authority of the receivers to transfer the contract to appellee, that it was transferred to it, and that appellee had any interest in same; admitted its refusal to carry out the contract with appellee, and denied that it was damaged by such refusal, and reserved a demurrer to the complaint, setting up five grounds. The following amendment to the answer was filed: "That T. H. Bunch Company, with which it is alleged in the complaint that this defendant made a contract to sell three hundred (300) tons of cotton seed meal, etc., at the time of said alleged contract was a corporation engaged in purchasing and manufacturing corn, oats and other grain into meal, flour and other products and putting same upon the market and selling same, and in other mercantile pursuits; that at the time of its alleged purchase of said cotton seed meal it was engaged in that business; that the amount of its assets was $100,000 or more, and that its indebtedness amounts to $200,000 or more, and the receivers alleged to have been appointed to take charge of said estate were appointed without authority of law, and that the alleged transfer from said alleged receivers to the said F. E. Morse & Company was without authority of law, and such sale was therefore void.

"It further states that, since the filing of said complaint, said T. H. Bunch Company has been declared a bankrupt by the United States Circuit Court for the Eastern Division of the Eastern District of Arkansas, and said alleged receivers, by order and judgment of the court, were ordered and directed to turn over all the property and assets of said T. H. Bunch Company to the trustee in bankruptcy, and by the judgment and decree of the court it was held in said cause that all acts and things which had been done by or through said alleged receivers were without force and effect, and were an absolute nullity; that the appointment was without authority of law and void; it therefore alleges that the plaintiff has no title to the contract sued on, and this defendant is not liable under the same."

Upon the issues thus made up a jury was waived by the parties, and the cause submitted to the court upon the agreed statement of facts.

The proof shows that on August 1, 1909, the T. H. Bunch Company, a corporation of the State of Arkansas, was engaged in the city of Little Rock in the business of buying and selling merchandise, produce and commodities and handling goods on commission; that appellant was a corporation of Tennessee engaged in business in Arkansas as a foreign corporation manufacturing and selling cotton seed products. On the 11th of August the Bunch Company over the 'phone offered to buy cotton seed meal of appellant company at a certain price, October and November delivery, to be shipped on dates designated by buyer in said months. This offer was accepted by telegram on 12th, and confirmed by letter on 13th, and by following letter on August 14:

"The T. H. Bunch Co., Little Rock, Ark.

"Gentlemen:—This will confirm our sale to you, under date of August 12 of three hundred (300) tons cotton seed meal to analyze 7 3-4 to 8% at $24 per ton, f. o. b. Jonesboro, Ark. Shipment 200 tons October, 100 tons November. It is understood that you may order screened, cracked cake on this contract at the same price.                    "Yours very truly,.

"Roberts Cotton Oil Co.

"Jno. E. Roberts, Sec. and Treas.."

Indorsement on letter:

"For value we hereby assign all our rights and title to this contract to F. E. Morse & Co.

"Cochran & Kavanaugh, Receivers for T. H. Bunch Co.

"By C. C. Kavanaugh."

After said contract was made, and prior to September 18, the market began to advance, and said meal was worth for October and November delivery between three and four dollars a ton more than the contract price. On September 18 a stockholder of the Bunch Company applied to the Pulaski Chancery Court for a receiver to take charge of the assets of said company and wind up its affairs, alleging that the corporation was unable to pay its debts as they matured and was insolvent, that it had much perishable property on hand that should be put into the custody of some proper person pending the winding up of affairs of said corporation. The court appointed H. K. Cochran and C. C. Kavanaugh receivers, setting forth in the order all the matters

enumerated in section 6348 of Kirby's Digest of the statutes of Arkansas. On the same day appellant wired T. H. Bunch Company: "Any contract or obligation we have with you is cancelled and at an end," and wrote a letter reciting the telegram, and "which we confirm, and would say that we cannot have any contract or business with a defunct firm." On the 23d the receivers notified appellant they would insist upon the performance of the contract, and it answered denying the right of the receivers to hold it to the contract and claiming it was cancelled. On the 29th the receivers again notified appellant it would be held to the contract, that the meal had been sold to the Bunch Company, and it was their purpose to buy in the open market meal to fill the sales orders made against this purchase. The meal purchased for future delivery had been resold by Bunch Company before the appointment of receivers. Bunch Company had purchased meal from others besides appellant and sold against all its purchases. On October 10 the receivers represented to the chancery court that they could sell to F. E. Morse & Company, appellee, all their contracts for the purchase of cotton seed meal for $1,000, the purchaser assuming the performance of all their contracts for the sale of meal. The court ordered the sale, the contract sued on herein being specifically described in the order, which was made to said appellee, the purchase money paid, and the sale duly reported to the court, and by it confirmed on October 12, 1909. The receivers indorsed their assignment and transfer upon the contract, appellant's letter of August 14, 1909, set out above. On the 12th, appellee directed appellant to deliver 200 tons of meal in accordance with the terms of the contract, which it refused to do, returned the shipping instructions, and advised that it had no contract with the receivers of the Bunch Company. On November 1 it ordered appellant to deliver 100 tons of meal, which it refused to do, claiming the contract had been cancelled. Appellee, after the refusals, went into the market and bought the meal, having to pay therefor for the 200 tons $781.50 and for the 100 tons $420.00 more than the contract price. The market price of this meal at Jonesboro f. o. b. on cars on October 13, 1909, was $4 over the contract price and on November 1 the same. The agreed statement concludes thus: "That on January 17, 1910, three creditors of the T. H. Bunch

Company filed a petition in bankruptcy against the T. H. Bunch Company, alleging that it was insolvent, and had a receiver appointed by the United States court, because of insolvency, and within 30 days subsequent to that date an adjudication was had in said bankruptcy court, by which the T. H. Bunch Company was adjudged a bankrupt, and thereupon a receiver was appointed, and a petition was presented to the Pulaski Chancery Court, asking that the assets of the bankrupt be turned over to the receiver in bankruptcy, and this was done. That thereafter said bankruptcy court made an order confirming the acts of the receivers appointed by the State court, among said acts confirmed being the sale of the contract of the Roberts Cotton Oil Company to F. E. Morse & Company, as hereinbefore described; that the act of the bankruptcy court in confirming said contract was done without notice to this defendant and without its knowledge."

The court made certain declarations of law, and rendered judgment against appellant for $1,200, and it appealed.

*J. W. & M. House, Ed. H. Mathes* and *J. W. House, Jr.,* for appellant.

1. The bankruptcy act of Congress of July 1, 1898, superseded the State law on insolvency, whether the bankrupt be an individual or a corporation. 88 Ark. 519, and cases cited; 190 U. S. 1; 127 Fed. 180; 143 Fed. 665; 143 Fed. 395; 78 N. W. 1038; 57 Cal. 197; 92 Fed. 329.

2. The receivers appointed by the chancery court had no power to assign the contract which T. H. Bunch Company had with appellant. It was a personal contract, and, besides, when the Bunch Company became insolvent and was placed in the hands of receivers, it was in no attitude to enforce the contract; and to be binding a contract must be binding upon both parties—mutual and not unilateral. 123 N. Y. 738; 41 Am. Rep. 517; 25 *Id.* 541; 55 Pa. St. 504; 35 Cal. 291; 61 N. E. 12; 81 Fed. 282; 111 Am. St. Rep. 171; 40 N. E. 410; 55 Mich. 629. After the company went into the hands of receivers, subsequent actions by the receivers were void, and the order of the Federal court approving such transfer was void, because it was done without authority. 4 Gill & Johns. (Md.) 467; 21 Wend. (N. Y.),

139; 13 La. Ann. 419; 18 N. H. 293; 21 Watts & S. (Pa.) 221; 34 Mich. 89.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

1. Action under the State statute for winding up a corporation on the suit of the stockholders is not forbidden by the mere passage of the bankruptcy act. The facts in the Hickman case, 88 Ark. 519, relied on by appellant, were essentially different from the facts in this case. 190 U. S. 1; 72 Pac. 398; 4 Wheat. 102; 12 *Id.* 213; 68 Pac. 814; 55 Atl. 868; 20 Wash. 545; 3 Dill. 477; 5 S. C. 159. It has been held that where an attempt was made by a debtor to make a voluntary assignment, such assignment was not void, but that proceedings under it would be superseded by proceedings under the bankruptcy law. 91 U. S. 496; 108 U. S. 379. See also 59 S. W. 297; 76 Pac. 934; 51 S. E. 466; 96 Md. 341; 53 Atl. 934; 66 S. E. 776; 110 Fed. 927; 112 Fed. 407; 159 Fed. 414; 123 Fed. 921; 154 Fed. 761.

2. A vendor has no right to rescind a contract merely because the vendee has become insolvent. 68 Ill. App. 131; 55 N. E. 941-4; 100 N. Y. 121; 47 N. Y. Supp. 383; 91 N. Y. 153, 165, 166; 1 Clark, Chancery, 123. When the vendor repudiates the contract, a tender is not necessary. 13 Ark. 437; Hunt on Tender, § § 55, 56; 79 Tex. 272; 1 Pet. 455; 74 N. W. 1057; 68 Ark. 505, 521; 139 Mass. 133.

3. The contract was assignable. It was for the sale of a specified amount of cotton seed meal for a specified price. There was no personal element in it. Kirby's Digest, § 509; 1 Crawford's Dig. 171; 3 *Id.* 94.

KIRBY, J., (after stating the facts.) It is contended (1) that the national bankruptcy act superseded all State laws authorizing the affairs of insolvent corporations to be wound up, and that the Pulaski Chancery Court was without jurisdiction to appoint receivers or order the sale of the contract, and that such sale and transfer was void; (2) that the insolvency of the vendee authorized the vendor to rescind the contract of sale; (3) that the contract was not assignable.

1. It is no longer questioned that the national bankruptcy law brooks no interference with its operation, and supersedes all State insolvency laws in conflict with it or that provide the same relief. *Sturgis* v. *Crowninshield,* 4 Wheat. 122, 4 L. Ed. 529;

*Ogden* v. *Saunders,* 12 Wheat. 213, 6 L. Ed. 606, and cases cited in division 2 of note to *Corling* v. *Seymour Lumber Co.,* 51 C. C. A. 11.

But it is also true that such Federal bankruptcy law does not repeal or abrogate State laws in conflict, but only supersedes and suspends their operation for the time being upon persons or cases within the purview of the Federal statute. *Ib.* note, *supra.* The National bankruptcy act does not apply to all persons and all corporations. The proceedings in the State court, and the appointment of receivers of the T. H. Bunch Company at the suit of a stockholder, alleging that it was not able to pay its debts as they matured, and insolvent, occurred on September 19, 1909. The three creditors of the company filed the petition in bankruptcy against it on January 17, 1910, within two days of four months after the appointment of the receivers by the State court. At that time the bankruptcy act only permitted involuntary proceedings to be had against corporations of the class of the T. H. Bunch Company, and denied them and their stockholders the benefit of the bankruptcy proceedings by a voluntary petition. In other words, such corporation was denied the benefit of the bankruptcy act except by involuntary proceedings upon petition of three of its creditors.

It is true that the appointment of the receivers by the State court for the insolvent company constituted an act of bankruptcy within the meaning of section 3a (4) of the bankruptcy act, which could have been taken advantage of by the creditors of said company by involuntary proceedings at any time within the four months thereafter, and which was done on the 17th of January, 1910. This insolvent company and its stockholders knew of its condition, and could not invoke the benefit of the bankruptcy law to preserve its estate and protect its creditors, and for this purpose resorted to the State tribunal, which had plenary powers unless their execution was superseded by the bankruptcy law. It was insolvent, but could not set in operation the bankruptcy law, and must either flounder along in an attempt to do business until it was attacked by creditors or resort, as it did, to the tribunal of its residence. The chancery court appointed receivers to collect and preserve the estate and protect the creditors, which it had the right to do unless and until the bankruptcy

law was set in motion against the company. Sections 950, 951, 954, 6342, 6345, 6349, Kirby's Digest; *Old Town Bank* v. *Mc-Cormick,* 96 Md. 341; *Watson* v. *Citizens' Savings Bank,* 5 S. C. 159; *State* v. *Superior Court,* 20 Wash. 545, 56 Pac. 35, 45 L. R. A. 177; *Keystone Driller Co.* v. *Superior Court,* 72 Pac. 398; In re *Edward Ellsworth Co.,* 173 Fed. 699; *Conklin* v. *U. S. Shipbuilding Co.,* 123 Fed. 913.

Having such right, the orders of the court and the actions of the receivers in pursuance thereof were valid as against all persons, unless it be the receivers and trustees in bankruptcy; and, although as to them such prior action of the receivers of the State court might be voidable, it would not and could not be void upon a collateral attack of a stranger to both proceedings. When the proceedings in bankruptcy were instituted, it displaced those of the State court, and terminated its jurisdiction, and, as was said In re *Watts & Sachs,* 190 U. S. 1: "It has already been assumed that the bankruptcy proceedings operated to suspend the further administration of the insolvent's estate in the State court, but it remained for the State court to transfer the assets, settle the accounts of its receiver and close its connection with the matter. Errors, if any, committed in so doing could be rectified in due course and in the designated way."

The case of *Hickman* v. *Parlin-Orendorff Co.,* 88 Ark. 519, in which it was said: "The insolvency laws of Arkansas were suspended by the bankruptcy act of Congress of July 1, 1898, and since that date have remained and are now in abeyance, in so far as they relate to the same subject-matter and affect the same persons as the act of Congress, which is still in force," is not in conflict with the views herein expressed, since it was expressly said that such laws were suspended only "in so far as they relate to the same subject-matter and affect the same persons as the act of Congress;" and that was a case of an individual to whom the bankruptcy law was applicable.

In addition, the acts of the receivers of the court were confirmed and approved by the orders of the bankruptcy court, including the transaction of the sale of the contract to appellees herein. It follows, even without regard to this, that the action of the Pulaski Chancery Court in ordering and approving the sale of said contract was valid, so far at least as appellee is con-

cerned, and conveyed the title of the said T. H. Bunch Company.

2. Appellant made no tender, nor in any way offered to perform its contract, nor demanded payment in advance, which it might have had the right to because of the insolvency of its vendee, but assumed, because of such insolvency, the right to declare its own contract broken and at an end and refused absolutely to perform it. This it had no right to do; the insolvency of the vendee alone not releasing it. *Brassel* v. *Troxel,* 68 Ill. App. 131; *Vandegrift* v. *Cowles Engineering Co.,* 55 N. E. 941-4; *Pardee* v. *Kanady,* 100 N. Y. 121; In re *Carter,* 47 N. Y. Supp. 383; *New Eng. Iron Co.* v. *Gilbert El. Rd. Co.,* 91 N Y. 153-5-6; *Merchant* v. *Rawson,* Clarke, Ch. (N. Y.) 123.

3. It is next contended that the contract was personal and not assignable; but the subject of the contract involved no personal relation of confidence between the parties, or the exercise of personal skill or science, and there was nothing in its terms to prevent an assignment, and this contention is without merit. Kirby's Digest, § 509; *Vandegrift* v. *Cowles Engineering Co., supra.*

It was not necessary for appellee to make a tender in cash, as appellant repudiated the contract and refused to perform it; and the proof shows that because of such refusal appellee was damaged in the sum of $1,200, the amount recovered. The judgment is therefore affirmed.