PETTY, TRUSTEE, *v.* WILKINS.

Opinion delivered June 11, 1917.

BANKRUPTCY—TRUSTEE TAKES TITLE UPON THE FILING OF THE PETITION. The purpose of the bankruptcy law is to preserve intact the assets of the bankrupt for disposition in accordance with that law, and when the adjudication has been made and the trustee appointed, the trustee takes title to the property or funds of the bankrupt as of the time of the filing of the petition, and not as of the date of the adjudication.

Appeal from Clark Circuit Court; *George R. Haynie,* Judge; reversed.

*John H. Crawford* and *Dwight H. Crawford,* for appellant.

1. The title to the property of the bankrupt vested in the trustee when the adjudication was made and related back to the date of the filing of the petition. 228 U. S. 474, 459, 479; 222 *Id.* 300, 307; 4 Am. Bankr. Rep. 578; 73 Mass. 579; 143 Fed. 91; 213 *Id.* 396; 36 Am. Bankr. Rep. 354; 37 *Id.* 7.

2. The debt due from Wilkins to Norris had become a part of the bankrupt estate and passed to the trustee as of the date of filing the petition and Wilkins could not plead payment. 116 Fed. 530; 8 Am. B. Rep.

640. The lien of the garnishment was discharged. 128 N. W. 645, 25 Am. B. Rep. 53.

3. Proceedings in State courts are stayed by the Bankruptcy Act. Wilkins' payment was not under compulsion of valid process. He had notice of the filing of the petition. 184 U. S. 1, 14 *et seq.;* 36 Am. Bankr. Rep. 354; 37 *Id.* 7; 143 Fed. 91; 56 N. E. 884.

*Callaway & Huie,* for appellee.

1. The garnished debt was paid into court after judgment and after the filing of the petition in bankruptcy, in good faith, before adjudication. The garnishee was not liable to the trustee in bankruptcy, subsequently appointed, for money so paid in obedience to the writ. 186 Fed. 84; Bankruptcy Act 1898, § 70a; 201 U. S. 353; 154 N. W. 268.

SMITH, J. This cause was tried upon the pleadings, consisting of the complaint, the answer and the reply, there being an agreed statement of facts, which recited that the allegations of each of these pleadings were true, the material facts there recited being as follows:

Appellant, as trustee of the bankrupt estate of William I. Norris, sued appellee to recover a sum of money due by appellee to the bankrupt. A petition in involuntary bankruptcy was filed against Norris on December 28, 1915, and he was adjudged a bankrupt on February 3, 1916. On November 28, 1915, T. H. Baker sued Norris for debt, and caused garnishment process to issue against appellee Wilkins, which was made returnable on December 29, 1915, but, for some reason, the cause was continued to January 3, 1916, at which time judgment was rendered in favor of Baker against Norris in the sum of $163.71. The answer set up the facts in regard to the garnishment proceeding, and alleged that appellee was indebted to Norris, and had, on the day of the rendition of the judgment against him, "in good faith paid over to the said T. H. Baker and the officers of said justice court the sum of $163.71, in satisfaction

of said judgment so rendered against him.'' And it was further alleged that no appeal had been prosecuted from this judgment, and that no restraining order or other process had ever issued from the Federal court where the bankruptcy case was pending restraining the justice of the peace proceedings. To this answer a reply was filed, which alleged "that on the day on which said garnishment was returnable, appellee had information of the petition in bankruptcy against Norris.''

Some uncertainty arises as to the day on which the reply charged appellee had notice of the bankruptcy proceedings. The garnishment was returnable December 29, 1915, although the judgment was not rendered until January 3, 1916, thereafter. But we think that, if the allegations of the reply be construed as referring to the date of the rendition of the judgment, still a fair construction of the language of the reply, considered in connection with the other pleadings, is to charge that appellee had notice of the bankruptcy proceedings before he paid the judgment against himself. It is true his answer alleged that he paid this money in good faith, but it does not allege that it was paid in ignorance of the bankruptcy proceeding, and we must construe the allegation of good faith in the answer as meaning that there was no collusion between appellee and the judgment plaintiff, but that the money was paid in discharge of what appellee regarded as his duty in the premises. Appellee insists, however, that mere information as to the filing of the petition would amount to nothing and would have no effect whatever, as the title to the bankrupt's property, as well as the right of possession, remains in the bankrupt until the receiver is appointed, who merely becomes custodian of the property until the adjudication and the election of the trustee, at which time, and only at such time, does the title vest in the trustee. The correctness of this position presents the controlling question in the case.

In support of his position, appellee cites and relies upon the case of *In re Zotti,* 186 Fed. 84, the syllabus in which case is as follows:

"Where a bank paid checks drawn by a depositor in ignorance of the filing, late the day before, of an involuntary petition in bankruptcy against the depositor, and the receiver, who qualified on the day of the payment of the checks, made no demand for the depositor's funds until after the checks were honored, the trustee, subsequently elected, could not recover from the bank the amount paid on the checks, though Bankr: Act July 1, 1898, c. 451, sec. 70a, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), vested in him, as of the date of the adjudication, the title of the bankrupt to the property which, prior to the filing of the petition, the bankrupt could have transferred."

It appears, however, that the bank in that case honored the check of its depositor in the usual and ordinary course of business, and did so without knowledge of the existence of the petition in bankruptcy. Absence of knowledge there, and its existence here, renders the case cited inapplicable to the instant case.

In the 4th edition of Brandenburg on Bankruptcy, at section 743, it is said: "Section 70a provides that the trustee shall, upon his appointment and qualification be vested with title to non-exempt property of the bankrupt 'as of the date he was adjudged a bankrupt.' This clause in section 70a should be construed together with the clause in the same subdivision that the trustee is vested with all property which prior to the filing of the petition, the bankrupt could have transferred; the provisions of the act under which the right to prove claims or procure a discharge therefrom is determined as of the day the petition is filed; and the provision that the schedules of property in voluntary proceedings must be filed with the petitioner; and construing the act as a whole, the line of cleavage with reference to the condition of the bankrupt estate is fixed as of the time at which the

petition was filed, and the property which vests in the trustee at the time of adjudication is that which the bankrupt owned at the time of the filing of the petition.''

In support of this text a number of cases are cited, one of the latest being that of *Everett* v. *Judson*, 228 U. S. 474. In that case it was said:

''While it is true that section 70a provides that the trustee, upon his appointment and qualification, becomes vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt, there are other provisions of the statute which, we think, evidence the intention to vest in the trustee the title to such property as it was at the time of the filing of the petition. This subject was considered in *Acme Harvester Co.* v. *Beekman Lumber Co.*, 222 U. S. 300, 56 L. Ed. 208, 32 Sup. Ct. Rep. 96, wherein it was held that, pending the bankrupt proceedings, and after the filing of the petition, no creditor could obtain by attachment a lien upon the property which would defeat the general purpose of the law to dedicate the property to all creditors alike. Section 70a vests all the property in the trustee, which, prior to the filing of the petition, the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him. The bankrupt's discharge is from all provable debts and claims which existed on the day on which the petition for adjudication was filed. *Zavelo* v. *Reeves,* 227 U. S. 625, 630, 631, *ante,* 676, 678, 33 Sup. Ct. Rep. 365. The schedule that the bankrupt is required to file, showing the location and value of his property, must be filed with his petition. We think that the purpose of the law was to fix the line of cleavage with reference to the condition of the bankrupt estate as of the time at which the petition was filed, and that the property which vests in the trustee at the time of adjudication is that which the bankrupt owned at the time of the filing of the petition.''

See, also, *Toof* v. *City Nat. Bank of Paducah, Ky.,* 206 Fed. 250, and cases there cited, and *In re R. & W. Skirt Co. et al.,* 222 Fed. 256, and cases there cited.

The decisions of the Supreme Court of the United States and of the other Federal courts appear to make it plain that the purpose of the bankruptcy law is to preserve intact the assets of the bankrupt for disposition in accordance with that law, and when the adjudication has been made and the trustee appointed, the trustee has title to the property or funds of the bankrupt as of the time of the filing of the petition, and not as of the date of the adjudication.

It follows, therefore, that the court below erred in dismissing the suit of the trustees against appellee for the sum due by him on the date of the filing of the petition in bankruptcy, and that judgment will be reversed and judgment will be rendered here for that sum.