TENNISON v. HANSON.

Opinion delivered November 11, 1918.

1. TRIAL—QUESTION FOR JURY.—Testimony *held* to make it a question for the jury whether defendant had not violated his contract with a partnership before such firm became insolvent and went into bankruptcy.

2. BANKRUPTCY—ASSETS—CHOSE IN ACTION.—Where defendant violated his contract with a firm before the members thereof became bankrupt, a cause of action in favor of such firm thereby accrued, and upon their bankruptcy passed to the trustee in bankruptcy.

Appeal from Lafayette Circuit Court; *Geo. R. Haynie,* Judge; reversed.

STATEMENT OF FACTS.

Scott Bros., a partnership, were cotton factors engaged in business at Paris, Texas. J. D. Hanson, a merchant at Buckner, Arkansas, entered into two written contracts with Scott Bros., dated, respectively, August

4 and August 16, 1916. By the first contract he agreed to sell the above firm 200 bales of lint cotton, grade middling, to be delivered at stations between the towns of Buckner and Stevens, Arkansas, at a price of 13 cents per pound to be paid on delivery during the month of September. The second contract was the same as the first, except he agreed to sell 100 bales, to be delivered during the month of October.

Scott Bros. went into bankruptcy on September 24, 1916, and Hanson got notice of it on the 25th. The Scott Bros. were adjudged bankrupts in the District Court of the United States of the Eastern District of Texas on the 10th day of October, 1916. On the 23rd of September, 1916, Hanson wrote to Scott Bros. as follows: "I thought, as it was getting along towards the last of the month, that I had better write you concerning the cotton that I had sold you. I had made contracts with a lot of farmers for a lot of this cotton, but up to this time I have not been able to get any of this cotton. I might have been able to have had some of this cotton delivered, but I thought that it would cost me more than it would possibly amount to, so I am going to ask you to make the best proposition that you will to let me out of this deal. Of course, I know that you have got me skinned a city block in this deal, but feel that with the business dealings that we have had together that you might let me out of this deal with some feeling, so I am going to ask you to be as nice to me as you possibly can. Trusting to hear from you at your earliest convenience, I beg to remain," etc.

Hanson was asked why he wrote the letter and answered as follows: "They called me up and wanted a statement in dollars and cents. They offered to take $1,500 for the contract over the telephone that day, and I figured if I could buy them—I had this cotton contract from my farmer customers—if I could buy them in at the right price, I could buy them and let them loose from their contract. I had this cotton bought in at 12½ cents, basis middling." Hanson wrote the letter endeavoring to

make a settlement. He thought Scott Bros. were solvent up to the morning of the 25th of September.

The two hundred bales of cotton to be furnished in September, went up from 13 to 14½ cents, and the price of middling cotton in October was from 15 to 16 cents. Earnest Beasley, who had charge of the office of Scott Bros. at Texarkana, Arkansas, received a letter from them on the 25th day of September, 1916, inclosing him a check for $300, stating that they were unable to continue in business any longer and directing him to close the office and get him another job. Hanson did not tender to Scott Bros. the cotton called for by his contract, nor did Scott Bros. before or after September 25, 1916, demand of Hanson the performance of his contract and tender or claim that they were able to pay for the cotton if delivered under the contract.

T. L. Tennison, as trustee in bankruptcy, sued J. D. Hanson, setting up the above contracts and alleging that Scott Bros. "was ready to receive said cotton and pay for it." That Hanson had violated his contract by failing to deliver the cotton to the damage of the plaintiff in the sum of $3,490, for which he prayed judgment. Hanson answered, admitting the execution of the contracts and alleging that he had the 200 bales of cotton at Buckner for delivery in the month of September, and would have delivered the same in accordance with his contract but for the fact that he was informed that on the 24th day of September, 1916, Scott Bros. were insolvent; that an involuntary petition in bankruptcy had been filed in the State of Texas during the month of September, and that soon thereafter the firm was adjudged bankrupt; that the firm had not paid or tendered the price agreed to be paid for the cotton under the contracts.

Upon the issue of facts thus joined, the facts set forth above were developed at the trial, and after the evidence was all adduced the court instructed the jury over the exception of the plaintiff to return a verdict in favor of the defendant, and from the judgment rendered in his favor the appellant duly prosecuted this appeal.

*D. L. King,* for appellant.

It was error to direct a verdict. There was a question for a jury. 199 S. W. 530. Appellee made no tender of the cotton but breached his contract and was liable. The insolvency of appellant was no excuse for failure. 97 Ark. 521; 129 *Id.* 364; 202 S. W. 687; 200 Ark. 993.

*Searcy & Parks,* for appellee.

The court properly directed a verdict. No demand was made for the cotton. Scott Bros. were insolvent and bankrupts. Appellee had the right to treat the contract at an end. 97 Ark. 521; 29 N. E. 1124; 124 U. S. 385.

WOOD, J. (after stating the facts). The testimony of the appellee tends to show that up to the 25th of September, 1916, he thought that the firm of Scott Bros. was solvent. Two days before this he wrote to the firm of Scott Bros. a letter from which the jury might have found he had concluded at that time to abandon the performance of his contract on account of his inability to procure the cotton, and to pay the damages. This letter, taken in connection with the other testimony set forth in the statement, made it a question for the jury to determine as to whether or not the appellee had violated his contracts before the firm of Scott Bros. became insolvent and went into bankruptcy.

There was testimony also to warrant a finding that the firm of Scott Bros. had sustained damages by reason of the failure of appellee to comply with his contract. If appellee abandoned, and thus failed to perform his contract at a time when the firm of Scott Bros. was able and ready to perform the contract on its part and damage thereby accrued to Scott Bros., then the amount of such damages was an asset of Scott Bros. which upon the filing of the petition in bankruptcy passed into the hands of the trustee and he was authorized to sue for the same. These contracts and the rights which had accrued under them, were owned by Scott Bros. at the time of the filing of the petition in bankruptcy, and by the filing of such petition their rights passed to the appellant, the trustee in bank-

ruptcy. See *Petty* v. *Wilkins,* 129 Ark. 364. See also *Collier* v. *Hopper,* 133 Ark. 599.

The testimony tended to prove that the appellee made no tender of the cotton, nor in any way offered to perform his contract, but, on the contrary, the evidence tends to show, as above stated, that he did not intend to comply therewith. If the appellee had tendered the cotton and the firm of Scott Bros. had failed to perform its contract by paying the contract price for the cotton on account of insolvency, then such failure would have been a good defense to the present action. *Roberts Cotton Oil Co.* v. *F. E. Morse & Co.,* 97 Ark. 513-522 and cases there cited. But such are not the facts presented by this record. The court therefore erred in directing a verdict in favor of the appellee, and for this error the judgment is reversed, and the cause remanded for a new trial.