# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

CORNING ROLLER MILLS *v.* WILLIAM KELLY MILLING Co.

## Opinion delivered May 14, 1923.

1. ASSIGNMENTS—EXECUTORY CONTRACT OF SALE.—An executory contract for the shipment of flour of a certain kind is not of a personal nature and may be assigned, in the absence of a provision to the contrary.

2. ASSIGNMENTS—RATIFICATION OR WAIVER.—Though an executory contract for the shipment of flour of a certain kind and quantity contains a provision prohibiting its assignment, such provision may be waived or its violation ratified by the other party.

3. ASSIGNMENTS—RATIFICATION—EVIDENCE.—Evidence *held* to justify a finding that the buyer in an executory contract for the sale of flour consented to or ratified the assignment of the contract by the seller.

Appeal from Clay Circuit Court, Western District; *W. W. Bandy,* Judge; affirmed.

*C. T. Bloodworth,* for appellant.

There is no testimony showing that appellant assented to or ratified the assignment of the contract, which, by its terms, was not assignable. Parol testimony was not competent, being within statute of frauds. 25 R. C. L. 642, par. 272, 644, par. 274, 645, par. 276. The court erred in refusing to exclude the letters attached to depositions as exhibits. Erred also in giving instructions 1, 2, 3, 7 and 8, and in refusing appellant's requested instructions 1 to 9 inclusive.

*F. G. Taylor, John R. Beeching, John F. Rhodes,* and *William H. Burnett,* for appellee.

Contract could be assigned. 1 Williston on Contracts, 779, 789; 5 C. J. 876. The testimony shows

assignment of contract was assented to and ratified. 1 Williston on Contracts, 790; 55 Ind. App. 605, 104 N. E. 519; 21 N. J. Eq. 479; 176 Mass. 237, 57 N. E. 380. Statute of frauds not involved. 5 C. J. 989. Consented to estoppel. 21 R. C. L. 930, 5 C. J. 940; 219 Mass. 304, 106 N. E. 990; 173 Mass. 460, 53 N. E. 906; 83 Mo. A. 576.

WOOD, J. The William Kelly Milling Company (hereafter called appellee) a corporation of Kansas, engaged in the sale of mill products in this State, purchased of the Reno Flour Mills Company of Kansas City its plant before the 13th of October, 1920. On the 18th of October, 1920, it also purchased a contract which the Reno Flour Mills Company had with the Corning Roller Mills (hereafter called appellant) at Corning, Arkansas, of August 25, 1920. Under that contract the Reno Flour Mills Company agreed to sell to the appellant 310 barrels of "Craftsman" flour at $11.60 per barrel, to be shipped within sixty days. The contract, across its face, carried the following indorsement: "For value received we hereby assign the within contract to the William Kelly Milling Company. Reno Flour Mills Co., By C. O. Heinley."

In the body of the contract, among others, is the following provision: "Contract not subject to change: That there are no conditions, representations, warranties, oral or otherwise, and that there shall be no assignment or cancellation of this contract, except as herein stated, and that no agent or representative has authority to modify the printed terms of this contract."

On October 18, 1920, the appellee wrote to the appellant advising the latter that it had purchased its contract with the Reno Flour Mills Company, and advising the appellant that, unless appellee heard from the appellant to the contrary by wire, appellee would arrange to ship the flour as per appellant's contract with the Reno Flour Mills Company. The appellant answered on October 20 and acknowledged the receipt of the letter of the appellee and stated, among other things, as follows: "We

note that you have control of the Reno mill. In regard to the flour that we have booked with you for shipment October 25, we do not see how we can use this flour." Then, after assigning reasons for this action, the letter concludes: "We will have to ask that you cancel our order." The letter was signed "Corning Roller Mills, by Ed." On the 23rd of October the appellee wrote the appellant in answer that it had *bought high-priced wheat for the purpose of filling appellant's order,* and therefore could not consider cancellation, but would be willing to extend the shipping time thirty days. In answer the appellant wrote appellee as follows: "We are in receipt of your letter of the 23rd, and in reply beg to state *we will appreciate it if you will hold our flour for us thirty days and ship same latter part of November, as you stated."* The appellee in answer to the last letter wrote: "As requested, we will withhold shipment of your order until the last of this month." On November 20 the appellant wrote the appellee detailing the financial straits of appellant, and concluded the letter by requesting the appellee to cancel its order. In reply, the appellee stated that it could not cancel the order as requested, but "must insist either upon your accepting the contract as entered into or make a cash settlement for the difference between the contract price and the price at which we would be obliged to resell the flour, which, on this date, would amount to $914.59." The letter concluded by requesting the appellant to answer by return mail which method it preferred.

After the above correspondence the appellee, through the Miller's Exchange of Kansas City, Missouri, endeavored to have the appellant accept the order. Appellant wired the exchange on December 4, 1920, "Extend shipping period on car of flour." On December 6 the appellee again wrote the appellant that they had extended the order for shipment of flour on contract until December 24. On December 25, 1920, appellant wired appellee stating, "Just received notice you were ship-

ping us car of flour," and further stating that it could not handle the car just then, and asking appellee to divert it, as it would be left in the hands of the railroad on arrival. Appellant also on that day wrote appellee telling it that it should not have loaded the car without ascertaining whether the appellant would take up the draft and unload the car. On December 27, 1920, the appellee wrote to the appellant that it had sent forward the car on the 25th, and that the matter was now out of its hands. The appellant in answer wired the appellee that the car would be refused on arrival.

This action was instituted by the appellee against the appellant. The appellee, in its complaint, set up the contract and the purchase thereof by it, and alleged that, for valuable consideration, it was assigned to the appellee by consent of the appellant, and that the appellant was due the appellee the sum of $725.15 for loss growing out of breach of the contract. The appellant answered, and admitted that they had entered into a contract with the Reno Flour Mills Company, but alleged that such contract was not assignable, and denied that it had consented to the assignment, and denied any liability to the appellee.

The appellee introduced the correspondence by letter and telegram as above set forth. A witness for the appellee testified that it had sustained a loss of $725.15 by reason of the refusal of appellant to accept the flour. One of the witnesses for the appellee (Anderson) testified that he was agent of the appellee, and as such on December 3, 1920, went to Corning, Arkansas, for the purpose of settling the controversy between appellant and the appellee. He talked with Bennett, one of the members of the firm of the appellant, and Bennett told witness that at that time he could not take any of the flour; that they then had too much on hand. Witness asked Bennett what date the appellee could ship the flour, and Bennett replied that he could take care of it along about the 20th

of December, and it was agreed that the 24th should be the date of shipment.

D. L. Bennett testified, on behalf of the appellant, that he was a member of the firm. He stated that he didn't know anything about the letters introduced in evidence by the appellee referring to the alleged assignment to the appellee of the appellant's contract with the Reno Flour Mills Company. He denied that he had any knowledge of letters purporting to have been written by the appellant to the appellee requesting the latter to hold the flour order for appellant and ship the same the latter part of November, as stated in one of the letters. Witness never wrote such a letter, and didn't authorize any one else to write a letter to that effect. Witness admitted having a conference with Anderson, but denied that he had told Anderson that he would accept the flour. The appellee sent witness a contract to sign, but he refused to sign the same.

Anderson also was called as a witness for the appellant, and identified a letter written by the appellee to the appellant of January 5, inclosing new contracts for appellant to sign, and suggesting to appellant that, instead of extending the time on the original contract, it would be better to cancel that and enter into a new contract dated as of January 5, to run for sixty days.

Beard testified that he and Bennett were the partnership composing the firm of appellant. He testified that he did not authorize any one to sign the letter purporting to be the letter of his firm dated October 29, 1920, requesting the appellee to hold the flour for appellant for thirty days, and to ship the same the latter part of November. He stated that "Ed," who signed the letter, was Ed Stevens, and that witness gave him no authority to write any such letter. He further stated that he (Beard) had nothing to do with running the business; that the same was under the control of D. L. Bennett; that Stevens was the general roustabout. Ben-

nett either did the correspondence for the firm or told "Ed" to write, when he wanted to.

Bennett was recalled, and stated that Stevens was salesman for the appellant; that he had no right to make a contract binding the partnership.

Stevens testified in rebuttal, on behalf of the appellee, that he wrote the letter of October 29th, and admitted that he wrote other letters. He stated that if he wrote letters he would sign them "Ed." He did not consult Bennett when he wrote letters. Bennett had objected to witness writing letters. Witness did a little office work, selling goods, waiting on the trade, and also collecting and keeping books some. He stated that he had no authority or instruction from any member of the firm to write the letter of October 29th.

The above sets forth the salient features of the testimony. The appellant asked the court to instruct the jury to return a verdict in its favor, on the ground that the contract which is the foundation of the action is in writing and unassignable. The court refused this prayer.

The appellant offered instructions numbered from two to nine, inclusive, in which it sought to have the court tell the jury that the contract was unassignable, and that if this provision were waived it must be done in writing and with a full knowledge of all the facts, and with the intention to waive such provision; that the terms of the contract could not be changed by parol; that the appellant must have contracted with the appellee and agreed to accept the flour included in the contract from the appellee; that the appellant, after knowledge that the appellee was claiming to be the owner of the contract, must have done some act or made some contract or agreement with the intention, at the time, of ratifying the assignment of the original contract to the appellee.

The court refused appellant's prayers, and granted prayers of the appellee to the following effect: That if appellant entered into a contract with the Reno Mills Company, and that contract was assigned to the appellee,

and the latter notified the appellant of such assignment, and if the appellant ratified the assignment by requesting further time for the delivery of the flour under the contract, and further time was granted by the appellee, then appellant would be bound by the contract. And further, if the appellee shipped the flour in accordance with the contract between the Reno Mills Co. and the appellant, if there was a contract between them, and appellant refused to accept the flour, and appellee suffered a loss thereby, the verdict should be in favor of the appellee for such loss.

The court also, on its own motion, instructed the jury that, if Ed Stevens was the agent of the appellant, and appellant had received notice from the appellee of the assignment of the contract, and knew, after receiving such knowledge, that Stevens had written the letter of October 29, 1920, and did not within a reasonable time disavow such letter, then the jury should find for the appellee, unless Stevens wrote the letter without knowledge of the facts relating to the negotiations between the appellant and the appellee in regard to the contract and its assignment.

The court further instructed the jury that if Stevens, when he wrote the letter of Oct. 29, 1920, had authority to write the same, or if he had authority of Bennett to write the same, or if he had authority to act for the defendant generally, or if, in writing the letter, he acted within the apparent scope of his authority, but did not have special or general authority to write the letter, then appellant would be bound by the letter, if Stevens knew all the facts connected with the negotiations between appellant and appellee concerning the matter.

The court further told the jury that, in reaching a conclusion as to whether the appellant assented to the assignment, if there was an assignment, they should consider all the evidence introduced, including all the correspondence between appellant and the appellee, and all

acts of the parties. If they found that the appellant assented to the assignment, then the verdict should be in favor of the appellee, but if appellant did not assent, the verdict should be in favor of the appellant. The jury returned a verdict in favor of the appellee in the sum of $629.30. Judgment was entered in favor of the appellee for that sum, from which is this appeal.

1. The appellant contends that there was no testimony to prove that appellant consented to the alleged assignment by the Reno Flour Mills Company to the appellee of the contract between the appellant and the Reno Company. We cannot concur with learned counsel in this view of the evidence. The contract itself, by the indorsement across its face, shows that it was assigned, and it was proved that it was assigned for a valuable consideration. It was proved that this was made by the Reno Flour Mills Company and accepted by the appellee. Without reiterating and discussing the evidence, suffice it to say the correspondence between the appellant and the appellee shows that appellant, with full knowledge that the assignment had been made, ratified the same by recognizing the binding effect of the contract and asking the appellee to cancel the same, or, if it would not cancel the same, to indulge appellant in the matter of extending the time for shipment. Appellant repudiates the letters on the ground that they were not written by the authority of the appellant. But the issue as to whether or not Stevens, who signed his name to the letters as "Ed," had authority to do so, was, under the evidence, one for the jury. That issue was submitted to the jury under correct declarations of law.

The contract was not of a special personal nature, and therefore unassignable. It was for the sale and purchase of "Craftsman" flour, and the flour that was shipped was that kind of flour. "When a bilateral contract, still executory on both sides, is spoken of as assignable, it can mean no more than that performance of the duties can be delegated and that the right can be

assigned." 1 Williston on Contracts, 779. But, conceding, for the purpose of the opinion, that the contract contains a provision prohibiting its assignment, the provision nevertheless was one which the appellant could, and did, waive by the alleged letters which it wrote to the appellee above set forth. See also *Todd* v. *Griffin*, 55 Ind. App. 605; *Griggs* v. *Landis*, 21 N. J. Eq. 490; *Staples* v. *Sommerville*, 176 Mass. 237; also 5 C. J. 989.

2. Learned counsel for the appellant presents various other assignments of error in connection with the rulings of the court in granting and refusing prayers for instructions. We have carefully examined these, and find that the court's charge, when taken as a whole, is free from error, and it would unduly extend this opinion to discuss these rulings in detail, and could serve no useful purpose, as a precedent, to do so.

The most important issue is whether or not the appellant consented to or ratified the alleged assignment of the contract, which is the foundation of this action. That issue, as we have seen, was fully and fairly submitted to the jury by the trial court, and, since there was testimony legally sufficient to sustain it, the verdict is conclusive here. The judgment is therefore in all things correct, and it is affirmed.