SECURITIES, INC., APPELLEE, *v.* THE LOUISVILLE & NASHVILLE RD. CO., APPELLANT.

(No. 7603—Decided February 9, 1953.)

*Mr. Lee B. Kasson, Jr.,* for appellee.
*Mr. Frank F. Dinsmore* and *Mr. Harris K. Weston,* for appellant.

MATTHEWS, P. J. The plaintiff, appellee herein, Securities, Inc., having obtained a judgment against Owen F. McGarr in the Municipal Court of Cincinnati, instituted proceedings in aid of execution, in which the defendant, appellant, Louisville & Nashville Railroad Company was served with garnishment process. Upon the answer of the garnishee that it owed McGarr $43.87, which was not exempt, but that McGarr had filed a voluntary petition in bankruptcy and had been adjudged a bankrupt, the court ordered it to pay into

court the amount held by it. Upon the failure of Louisville & Nashville Railroad Company to comply with the order, this action was filed against it under favor of Section 11851, General Code, to recover judgment for the amount held. The court rendered judgment for the plaintiff. This appeal is from that judgment.

The parties entered into a stipulation of facts, which was filed by leave of court and, by separate entry, was directed to be filed with the papers in the case at the same time that the judgment was entered. We assume that this procedure complies with Section 11571, General Code.

We learn from the stipulation of facts that the order of garnishment was served on the defendant on February 21, 1952, and that on February 26, 1952, it answered the order, stating that it was holding wages amounting to $43.87 belonging to McGarr, which were not exempt.

It is specifically agreed that the judgment debtor (McGarr) was insolvent on February 21, 1952, and presumptively continued to be insolvent, and that on February 25, 1952, he filed a voluntary petition in bankruptcy in the United States District Court for the Eastern District of Kentucky, Covington Division, and was adjudicated a bankrupt on the same day.

At the hearing in the Municipal Court on the order of garnishment, which took place on March 5, 1952, the Louisville & Nashville Railroad Company, the garnishee, reported to the court that McGarr, the judgment debtor, had filed a petition in bankruptcy and been adjudged a bankrupt. As a result of the hearing, the court ordered the Louisville & Nashville Railroad Company to pay the money held by it into court. This order was served on the garnishee on March 6, 1952. On the same day, the United States District Court in the bankruptcy proceeding instituted by McGarr, made an order directing the Louisville & Nashville Railroad

Company to hold all wages due McGarr on February 25, 1952, which included the wages which the Municipal Court had ordered it to pay into the Municipal Court. This order of the United States District Court was served on the Louisville & Nashville Railroad Company and on Securities, Inc., on March 8, 1952, before the Louisville & Nashville Railroad Company had complied with the order of the Municipal Court. Thereupon, the Louisville & Nashville Railroad Company declined to pay over the money as ordered by the Municipal Court, and this action was instituted against it by Securities, Inc., to recover the amount.

It is evident that this case presents a conflict of jurisdiction between the agencies of government of the United States and the state of Ohio. As the Constitution of the United States confers power upon Congress to enact uniform laws upon the subject of bankruptcy, and as the defendant invokes that law as its justification for refusal to comply with the order of the state court, it is manifest that any conflict of jurisdiction must be resolved in favor of the paramount law of Congress.

By the first paragraph of Section 107, Title 11, U. S. Code (Section 67 of the National Bankruptcy Act), Congress enacted:

"Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition initiating a proceeding under this act by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent or (b) if such lien was sought and permitted in fraud of the provisions of this act."

The section contains many other provisions, none of which are deemed to have any relevancy to the issue in this case.

It would seem clear that in the absence of fraud as provided in the (b) alternative, the concurrence of two, and only two, conditions brings into operation the nullifying provisions of this section. The first condition is that the lien must have been obtained within four months "before the filing" of the petition in bankruptcy, and, second, the bankrupt must have been insolvent when such lien was obtained.

Applying the clear language of this section to the admitted facts in this case, the conclusion is inescapable that any lien acquired by the garnishment process was nullified.

The section has been uniformly so construed and applied to many different situations since the enactment in 1898 of the present Bankruptcy Act. In *Armour Packing Co.* v. *Wynn,* 119 Ga., 683, 46 S. E., 865, it was sustained as a defense to an action by a judgment creditor of the bankrupt's debtor, who, within four months of the filing of the petition in bankruptcy, had garnisheed the bankrupt's wages.

In *Petty, Trustee,* v. *Wilkins,* 129 Ark., 364, 196 S. W., 453, the petition in bankruptcy was filed while the state court action and garnishment were pending. Later, judgment was entered and the garnishee paid it. In an action by the trustee in bankruptcy, the court held that the payment to the bankrupt's judgment creditor was no defense.

In *Chicago, Burlington & Quincy Rd. Co.* v. *Hall,* 229 U. S., 511, 57 L. Ed., 1306, 33 S. Ct., 885, the court held that the jurisdiction of the bankruptcy court superseded that of the state courts in actions pending at the time of filing of the petition in bankruptcy both as to property that was exempt as well as nonexempt property and, therefore, held void the lien acquired by the garnishment and required the garnishee to pay the amount to the bankrupt to whom it had been set off as exempt, notwithstanding it had already paid

the amount to the bankrupt's judgment creditor in accordance with the order of the state court.

We do not understand that it is seriously contended that a lien obtained by judicial process against an insolvent debtor within four months of the filing of a petition in bankruptcy by or against the debtor can stand against the nullifying provisions of Section 67 of the Bankruptcy Act.

While liens obtained by legal proceedings *after* the filing of the petition in bankruptcy are not nullified by Section 67, it is said:

"They are subject to nullification upon the ground that the property was in the custody of the bankruptcy court and beyond the power process of another court to impose a lien." 6 American Jurisprudence, 1164, Section 1027.

The real contention in the case at bar appears to be that the proceeding in the Municipal Court had progressed to the point where the lien had ceased to exist and that as the nullifying provision applies only to liens, the nonexistence of a lien renders the section inapplicable. But this contention disregards the facts as stipulated. Assuming, but not deciding, that the order of the Municipal Court directing the garnishee to pay in the $43.87 might have the effect of transferring title to the fund, that order was not made until March 5, 1952, 11 days after the bankruptcy petition was filed and the adjudication in bankruptcy was entered, of which the Municipal Court was advised at the time it made the order. At that time the lien created by the filing of the bankruptcy had attached.

In 6 American Jurisprudence, 1052, Section 852, it is said:

"The trustee takes the status of a lien creditor as of the time when the petition in bankruptcy was filed."

In *Neyer, Trustee,* v. *Reuben H. Donnelly Corp.,* 78 Ohio App., 216, 69 N. E. (2d), 435, this court was required to determine the relative rights of a trustee in

bankruptcy and a judgment creditor of the bankrupt who had a levy upon a Dodge truck at the time the petition in bankruptcy was filed, which the execution officer sold thereafter, paying the proceeds to the judgment creditor. We think the syllabus, which we quote, fully discloses the purport of our decision:

"1. Money in the hands of a sheriff realized from a sale of personal property on an execution to satisfy a personal judgment at the time a voluntary petition in bankruptcy is filed by the judgment debtor does not belong to the judgment creditor, but is in the custody of the law and the claim of the judgment creditor cannot be perfected by its payment to him thereafter.

"2. The power to consummate inchoate rights ceases upon the filing of a petition in bankruptcy."

Our decision was in accord with this statement in 6 American Jurisprudence, 1164, Section 1028:

"Even where the proceeds of the sale have been paid over to the execution creditor, the bankruptcy court can compel their surrender if the sale was made after the filing of the petition in bankruptcy."

We are advised that the Municipal Court followed an unreported opinion of the Court of Common Pleas in the case of *Stacey* v. *Daniels,* affirmed without opinion by the judges of another appellate district, sitting by designation in the Court of Appeals of this district. As no opinion was delivered by the Court of Appeals, we have no way of knowing the ground upon which the affirmance was based. We would not be justified in assuming that the affirmance was based on the same considerations that controlled the Court of Common Pleas.

For these reasons, the judgment of the Municipal Court of Cincinnati is reversed, and the cause is remanded with instructions to render judgment for the defendant, appellant.

*Judgment reversed.*

Ross and HILDEBRANT, JJ., concur.