CARL PURNELL, D/B/A PLANTATION EMBERS ET AL *v.* JIMMY ATKINSON D/B/A ATKINSON & ASSOCIATES

5-5196                                   451 S. W. 2d 734

Opinion delivered March 30, 1970

· *Dickey, Dickey & Drake,* for appellants.

*Henry W. Gregory, Jr.* and *Robert Tolson, Jr.,* for appellee.

JOHN A. FOGLEMAN, Justice. Acting for Plantation Embers, appellant Carl Purnell entered into an oral contract sometime in 1966 with Atkinson-Torrence Incorporated. Plantation Embers is a corporation engaged in the restaurant business.[1] Atkinson-Torrence was operating as an advertising agency. By the terms of this contract Atkinson-Torrence was to handle Plantation Embers' advertising with KATV. This agreement was evidenced by a written authorization from Purnell to KATV, the content of which is not disclosed. A part of the advertising agency's responsibility involved the preparation of materials necessary for advertising three "spots" per week. Appellee Atkinson testified that this oral contract "was a continuing type of thing subject to cancellation on 30 days notice" and that it "was renewed in December for another year, December 1968." Because of this arrangement, which saved KATV time and expense, KATV discounted by 15% its charge for this advertising. The discount went to Atkinson-Torrence and was its compensation for services; hence, in effect, Purnell did not pay an additional charge for the services. Purnell was billed monthly for the preceding month by Atkinson-Torrence for all charges including the gross charge by the station.

Pursuant to the oral contract, a written contract was executed between KATV and Atkinson-Torrence. This contract ran from December 12, 1967, until December 12, 1968. Although Plantation Embers was not a formal party to this contract, it was made on appellant's authorization through the oral contract. Prior to this arrangement, Purnell had contracted directly with the television station.

---

[1]During a part of the time involved, the business was operated as a proprietorship. It is conceded by appellant that, for the purpose of this case, the change in status is immaterial.

The corporation, Atkinson-Torrence, actually consisted of two people, Mr. Atkinson and Mr. Torrence. Mr. Torrence had done cartoon work used in KATV advertising for Plantation Embers previous to the oral contract with the advertising corporation and prior to the organization of the corporation. Mr. Atkinson, appellee, dealt with Mr. Purnell on copy changes for the advertising. On October 1, 1968, without the knowledge of Mr. Purnell the corporation was dissolved and Mr. Purnell's account assigned orally to Atkinson & Associates which consists solely of Mr. Atkinson. Atkinson renewed the written contract with KATV, effective December 17, 1968, in the name of Atkinson & Associates. The parties disagree as to whether Purnell had notice of this renewal. According to Atkinson it was dated December 17, 1968, and a copy sent to Purnell. Purnell denies that he ever received or saw a copy of this contract.

Apparently the first knowledge Mr. Purnell had of the change in the agency came through a letter from Torrence dated December 9, 1968. Purnell was behind in his payments for August and September, and this letter asked that he make these payments in order that the affairs of the corporation could be completed. Purnell testified that he had become unhappy with the advertising because of alleged errors in the announcements and that he had asked to be notified of the time the "spots" were to be run so that he might watch them. When this was not done he withheld payment for August and September, contrary to his prior practice of paying these bills promptly. Upon receiving the letter of December 9, he paid these two bills. Each month thereafter he received a bill for the preceding month but paid none of them. Upon receipt of a bill in February, which set out the balance past due for the months of October, November, and December and the balance due for January, Mr. Purnell wrote on the bottom of the bill, "Jimmy This is in error as these were cancelled months ago" and then returned the bill. When Mr. Atkinson received the bill with the notation,

he contacted KATV and arranged to have the advertising stopped as soon as he could. Appellee brought this suit when Mr. Purnell refused to pay the bill. Judgment was given to Atkinson for $870, the amount due prior to the time the cancellation was held to be effective, plus interest.

Appellant Purnell relies on two points: that there was no contract with Atkinson & Associates and, alternatively, that it had been cancelled. The first point turns on the validity of the alleged assignment. Appellant advances the theory that the contract was one for personal services and hence not assignable, relying on *Roberts Cotton Oil Co.* v. *F. E. Morse & Co.*, 97 Ark. 513, 135 S. W. 334, and *Leader Co.* v. *Little Rock Ry. & Elec. Co.*, 120 Ark. 221, 179 S. W. 358[2] and 6 Am. Jur. 2d, Assignment, p. 196, § 11. While appellee disputes this theory, it is not necessary to decide this question. An assignment which is invalid or ineffective, even where the contract is for personal services, may be validated by ratification which may relate back to the time of the assignment. 6 C. J. S. Assignments, p. 1133, § 78; 6 Am. Jur. 2d, Assignment, p. 196, § 11, p. 206, § 21; see *Corning Roller Mills Co.* v. *William Kelly Milling Co.*, 159 Ark. 1, 250 S. W. 895.

On the issue of ratification, the evidence taken in the light most favorable to appellee shows that appellant Purnell had notice of the assignment on the 9th or 10th of December, 1968. Subsequently he discussed the advertising with appellee, but made no objection to, or repudiation of, the assignment. In this discussion, Purnell again expressed his dissatisfaction with the way the "spots" were being run. The inference, then, is clear that he had knowledge that the spots were being run and would continue to be run. When appellant received bills for the advertising he made no objection until he received the January bill in February. Each statement that was sent him had an invoice from KATV showing the number of spots run during the preceding

---

[2]Neither of these cases involves personal services.

month. "Atkinson & Associates" was printed on the letterhead of each statement. These facts are sufficient to show that appellant knew the advertising was continuing and that Atkinson & Associates was handling the account. They also show that appellant made no objection and could be said to have ratified the assignment by his conduct. 6 C. J. S. Assignment, p. 1133, § 78; *Petitt* v. *F. V. H. Collins Co.*, 112 Mont. 12, 113 P. 2d 340 (1941).

Appellant takes the position that by not paying the monthly statements, he evidenced an intention not to ratify the contract. However, he did not pay the October and November bills even though he testified that he did not have notice of the assignment until the 9th or 10th of December, 1968.[3]

Appellee testified without contradiction that the oral contract could be cancelled by either party on 30 days' notice. While there is some evidence tending to show that the contract was cancelled prior to December 12, 1968, appellant now urges only that the contract was cancelled as of that date. He relies on the conversation that took place shortly after the letter of December 9, 1968. He testified concerning that conversation as follows:

> "And I told him that I was willing to pay for anything that I had agreed to buy and pay for, but that I was not happy with this situation, them showing spots that I couldn't watch and to take the dangers and risk of them running spots for me that I hadn't even seen, no way to proof copy or anything and that I didn't want to continue paying for something that I felt was doing me more harm than good. At no time during our conversation was any mention made of renewal of contract because I was very unhappy with this situation for a period. . ."

---

[3]Appellant's testimony on this point bears more directly upon the issue of cancellation than it does upon this issue.

On the other hand, Atkinson testified that he first heard of cancellation of the contract around February 10, when he saw the notation on the statement then returned by Purnell. To be effective, notice of termination must be clear, unambiguous and unequivocal. *Baker* v. *Missouri Nat. Life Ins. Co.*, 372 S. W. 2d 147 (Mo. Ct. App. 1963); *Petitt* v. *F. V. H. Collins Co.*, 112 Mont. 12, 113 P. 2d 340 (1941); *Warrick* v. *McKnab's Estate*, 164 Kan. 78, 187 P. 2d 502 (1947). We cannot say that appellant's statement met this test.

Appellant also contends that the contract expired by its own terms on December 12, 1968. Apparently he has confused the written contract to which he was not a party with the oral contract with the agency. While the written contract between appellee and KATV expired on that date, the oral contract did not, as shown by the only evidence in the record, *i. e.*, appellee's testimony. The court below held the oral contract in existence until February 13, 1969, when it was cancelled, and the record before us supports that finding. The written contract between the agency and the station was renewed in the usual course of their business.

The judgment of the circuit court was based on a finding that the contract had not been cancelled. Since there is substantial evidence to support that view, the judgment is affirmed.