No. 36,927

DUPUY G. WARRICK, *Appellant*, v. THE ESTATE OF W. M. McKNAB, Deceased, *Appellee*.

(187 P. 2d 502)

Opinion filed
December 6, 1947.

*Douglas G. Hudson,* of Fort Scott, argued the cause, and *Douglas Hudson* and *Howard Hudson,* both of Fort Scott, were with him on the brief for the appellant.

*Olin B. Scott,* of Winfield, argued the cause, and *Harold W. Herrick,* of Winfield, was with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This action was instituted in the probate court of Cowley county by Dupuy G. Warrick against the estate of W. M. McKnab, deceased, for an accounting of the profits of an oil lease block alleged to be due under the terms of a written contract. A demurrer was sustained to claimant's evidence in the probate court and he appealed to the district court. On trial in that tribunal a similar demurrer was overruled. The administrator of the estate then declined to offer any evidence. Thereafter a judgment was rendered against the claimant, from which he appeals, charging that the trial court erred in holding that his contract had been canceled and his claim against the estate barred by the statute of limitations and by laches.

The pleadings are not vital to our disposition of the issues raised by the appeal and for that reason need not be detailed. It will suffice to say the petition alleged the execution of the contract and asked for an accounting. The answer as originally filed admitted the execution of the agreement relied on as a basis for the relief sought but denied the estate was indebted or liable to the claimant in any amount. It also alleged the claim was barred by the statute of limitations. Subsequently, after claimant had adduced his evidence and with permission from the trial court, such pleading was amended to include the defense of laches.

The essential facts are not in controversy and can be summarized as follows:

On or about February 29, 1936, the appellant, Warrick, Frank Parish, and W. H. McKnab entered into a written contract by the terms of which appellant and Parish agreed to obtain for McKnab

a line of credit for the purchase of pipe necessary to drill for oil and gas.

In return for such credit McKnab agreed to drill five oil wells in a period of two years time at his own expense on locations to be selected and obtained by him, after consultation with the other parties to the agreement. If production was obtained McKnab was to reimburse himself for all expenses incurred by him and then pay appellant and Parish twenty percent of the net profits realized from the venture. Insofar as it pertains to this appeal the important part of the agreement, written by the appellant and signed by all three of the parties heretofore mentioned, is to be found in one paragraph which reads as follows:

"It is understood that in the event the price of oil shall decline to such point or conditions in the oil industry shall be such that it is apparent that the sale of acreage on locations obtainable for the purposes contemplated by this agreement is not feasible, then you shall have the right to pay for said pipe and terminate this agreement."

Subsequently, McKnab purchased the pipe specified in the agreement, amounting to approximately $30,000, on credit supplied by his cosigners, and undertook the drilling of the wells contemplated by its terms.

The first well drilled by him was known as Mohler No. 1. It was commenced on May 11, 1936. When completed it produced gas in small quantities for a short period. The Hunt well, a diagonal offset to Mohler No. 1, was started September 9 and completed December 3, 1936, and resulted in a dry hole. Work on the Frog Hollow block was started October 26, 1936, with the Charles well, which produced oil when completed January 12, 1937. Thereafter, McKnab drilled nine wells and contracted two in this block. December 1, 1939, McKnab sold the Frog Hollow property to the Hawkeye Oil Company, receiving for that sale, according to his own books, the sum of $375,000. In addition, he retained a one-eighth overriding royalty interest in the block, which interest at the time of the trial was paying an income of $200 per month.

The ten percent interest of Parish in the contract is not involved in the action, he having sold it to McKnab in August, 1936.

On December 14, 1936, McKnab wrote a letter from Winfield, Kan., addressed to the appellant at his law office in Kansas City, Mo., which, since it is a decisive factor in this lawsuit, will be set forth at some length. The first two paragraphs of that letter read:

"I am herewith enclosing complete accounting statements of all expenditures pertinent to the acquisition of acreage, rentals on same, labor, materials, drilling and miscellaneous costs incident to the drilling of the Mohler No. 1 and the Hunt No. 1, on the block of acreage, two and one-half miles northwest of Arkansas City, Kansas, in which you own a one tenth interest.

"I have listed on separate analysis sheets herewith enclosed the various classifications of expenses for the two wells that have been drilled, namely, the Mohler No. 1 and the Hunt No. 1."

In the next five paragraphs he reviewed some of the difficulties he had been having with the two wells to which he had theretofore referred and gave appellant other information with respect to them which is of no importance here. He then stated:

"I am debating now what to do next. If I go ahead under the Home Natural Gas Company contract and drill the third well and it turns out to be a dry hole, I will just have that much more expense added to my already heavy loss and if I do not drill the well, my contract with the Home Natural will be automatically cancelled.

"I have thought some of taking the Mohler well on down to the Bartlesville oil sand, especially since the Hunt logged something like 50' lower on the formations than the Mohler well, but that also is an expensive operation with a very remote possibility of striking oil in the Bartlesville.

"You will note from the expense sheets that I have an investment of $56,-554.62, and I feel that this load is about all that anyone could expect me to carry.

"I made a number of efforts to sell some of the leases as well as interests in the property, but without sucess, even after production of gas was obtained. No one seemed to be interested at any price. Of course, there is now no possible chance to sell acreage or interests in the property.

"You know that I exercised my right to pay for the pipe, as provided in paragraph 9 of your letter of February 29th, 1936, and under such circumstances, it seems to me that we have reached the end of our agreement.

"I would like to hear from you expressing concurrence in this conclusion."

The communication to which reference has just been made was not immediately received by appellant but it was delivered to and its receipt acknowledged by his office on December 15, 1936. However, it came to his attention in due time and he replied thereto on January 12, 1937. In this reply he referred to McKnab's suggestion about taking the Mohler well down to the Bartlesville oil sand and said "As you know, I am not qualified to express an opinion as to the advisability of this, and accordingly would not presume to make any suggestions." He then indicated he did not understand the last two paragraphs of McKnab's letter, which he set forth at length, and went on to say:

"As you know, I have not received any notice from you or anyone else that you claim to have terminated the agreement of February 29, 1936, under the provisions of paragraph 9 thereof. In fact, I have heard nothing from you on that subject prior to your letter of December 14. I had understood informally from Mr. Wilson and Mr. Parish that in their acquisition of your stock in the McKnab Oil & Gas Company·they had assumed payment of the purchase price of this pipe as a part of the purchase price of your stock, and Mr. Parish had also assigned to you his interest in the Mohler lease. Furthermore, paragraph 9 reads: 'It is understood that in the event the price of oil shall decline to such a point, or conditions in the oil industry shall be such, that it is apparent that the sale of acreage on locations obtainable for the purposes contemplated by this agreement is not feasible, then you shall have the right to pay for said pipe and terminate this agreement.'

"It is my understanding that conditions are more favorable in the oil industry now than they have been for many years, and that improvement is being experienced every day. Have you abandoned all the drilling operations and retired from the oil business? I am sure the industry would be very sorry to learn that so colorful a character had retired. I shall be glad to see you the next time you are up this way." ·

Following January, 1937, for a period of about three years, the appellant spent the major part of his time in New York, Delaware and Washington, D. C. His testimony was that from and after receipt of McKnab's letter of December 14, 1936, he had never received any communication or information from that individual with respect to the contract, and that the first knowledge he received about the Charles well having been drilled in successfully was in December, 1939, or in January, 1940, came from an announcement which he read in a newspaper to the effect McKnab had sold the Frog Hollow block. In response to a question by the court as to whether he did anything toward looking after the enterprise for which he had established credit he answered "No. It was left entirely in McKnab's hands, and the contract contemplated that."

The parties stipulated McKnab died April 18, 1942, that the first publication of notice of the appointment of administrator for his estate was April 23, 1942, and that the petition for allowance of the involved claim was filed in the probate court on November 6, 1942. Although not stipulated it is conceded the first obvious attempt by appellant to assert his rights under the contract against McKnab or his estate was made by the filing of his claim in probate court.

With facts substantially as heretofore related the trial court made extended findings of fact and conclusions of law on which it based its judgment the contract sued on had been canceled and that appellant's claim was barred by both the statute of limitations and

laches. No useful purpose would be served, and it would only encumber this opinion, were we to detail either findings or conclusions. It will suffice to say that when both are carefully examined it immediately becomes apparent the essence of the decision is that the provision of the contract herein quoted gave McKnab the option of canceling the agreement and terminating the rights of the parties thereunder when it became apparent the sale of acreage was not feasible, that he attempted to and did so by the language, also heretofore quoted, employed by him in his letter of December 14, 1936, and that the appellant not only understood such language to constitute a cancellation of the agreement but accepted it as having that force and effect.

Conceding McKnab had a right to cancel the contract under conditions therein stated and that he attempted in good faith to do so, as the trial court found, likewise assuming, although we confess we have some difficulty in finding evidence to sustain it, that at the time he made his attempt it was apparent the sale of acreage on locations obtainable for the purpose contemplated by the agreement was not feasible, we are unable to agree that his letter of December 14, 1936, was sufficiently clear and unequivocal to constitute a cancellation.

We believe the terms of the instant contract contemplated notice of its termination. Even if it had not done so, notice was necessary. See 17 C. J. S. 892, § 402, where it is said: "Notice of termination is essential to the exercise of an option to terminate a contract."

The general rule is that a notice of "cancellation" of a contract, to be effective as such, must be clear and unambiguous and convey an unmistakable purpose to rescind or forfeit the agreement. 12 Am. Jur. 1029, § 446; 17 C. J. S. 892, § 402; 3 Black on Rescission and Cancellation, 2d ed., 1413, § 574.

Mr. Black in his work states: "And where the conduct of one having the right to rescind a contract is ambiguous, and it is not clear whether he has rescinded it or not, he will be deemed not to have done so." (p. 1413.)

For similar statements see *Jack Mann Chevrolet Co. v. Associates Inv. Co.*, 125 F. 2d 778, and *Berwick Hotel Co. v. Vaughn, Appellant*, 300 Pa. 389, 150 Atl. 613; 71 A. L. R. 1340, 1345.

*Petitt et al. v. F. V. H. Collins Co.*, 112 Mont. 12, 113 P. 2d 340, holds that persons, selling land under contract, who had a right to cancel the agreement because of noncompliance with its terms did

not do so by writing a letter which, among other things stated, "If we don't hear from you in ten days we will take the place back. You have had plenty of time since last June to do what you intend to do.", for the reason that such letter did not evince a clear purpose to declare the contract at an end.

To the same effect is *Star-Chronicle Pub. Co. v. United Press Ass'ns*, 204 Fed. 217, where it was said:

"The oral conversation shown by the testimony to have taken place between Mr. Taylor, the manager of defendant, and the operator of plaintiff, in St. Louis, was clearly insufficient to constitute a notice of termination of the contract. The letter of July 5, 1910, by the defendant to the plaintiff, had it been received by the plaintiff, was insufficient as a notice of discontinuance of the contract, because of being indefinite and uncertain, in that it stated that it was the present intention of the defendant to discontinue, not that it would discontinue, the contracts." (p. 223.)

In *Pomerantz v. Mutual Fire Ins. Co., Appel.*, 279 Pa. 497, 124 Atl. 139, it was said:

"If the notice be equivocal or not indicative of a present cancellation, but a mere intention or desire to cancel in the future, a cancellation will not be effected." (p. 499.)

See, also, *Holmes Elec. Co. Phila. v. Goldstein, Ap.*, 147 Pa. Superior Ct. 506, 24 A. 2d 161, and *Ford v. Dyer*, 148 Mo. 528, 49 S. W. 1091, approving the general rule as herein stated and applying it to the facts therein involved.

A somewhat extended search has failed to reveal any decisions in this jurisdiction dealing directly with the general rule to which we have heretofore referred. However, it is interesting to note that in *Mosher v. Kansas Coöp. Wheat Mkt. Ass'n*, 136 Kan. 269, 15 P. 2d 421, an action to recover damages for the breach of a contract and in *Stromquist v. Nelson*, 159 Kan. 716, 158 P. 2d 458, a suit to terminate a lease, we have stated that an option to terminate a contract is in the nature of a forfeiture and will be strictly construed, and that a notice to terminate, to be effective, must be given at the stipulated time.

When tested by the principles of law announced in the authorities heretofore cited, we are convinced that McKnab's letter containing statements to the effect he was debating what to do next, he had thought some of taking the Mohler well on down to the Bartlesville oil sand, he felt that the load was about all that anyone could expect him to carry, there was now no possible chance to sell acreage, under such circumstances it seemed to him they had reached the end of

their agreement, followed by a final statement that he would like to hear from Warrick expressing concurrence in his conclusions, was not sufficiently clear, definite and unequivocal to constitute an effective notice of cancellation of the contract. This conclusion we believe is required by the uncertainty and indefiniteness of the letter itself. It seems inescapable when consideration is given to the fact that McKnab did not see fit to make his attempt at cancellation definite and certain after having been advised by Warrick in no unmistakable terms, at a time when that individual could not possibly have had any sinister purpose in view, that he did not understand the letter and desired further information as to just what its author had in view.

In arriving at our decision we have not been unaware of the trial court's findings of fact, that Warrick by his conduct showed he understood the language of the letter to be a notice of termination of the contract and acquiesced in its cancellation. These findings were motioned in due time and are therefore subject to review. We find nothing in the record, except silence and inaction to support them. In view of our conclusion as to the force and effect of the notice, failure to speak or act was no evidence of understanding or acquiescence. It follows such findings must be set aside.

That portion of the judgment holding appellant's claim was barred by the statute of limitations falls of its own weight by virtue of our decision the letter of December 14, 1936, did not result in a cancellation. By express terms the contract provided McKnab was to have two years from the date of its execution to drill five wells. The earliest possible date—in the absence of termination—the statute could have commenced to run was March 1, 1938. This action was commenced within five years from that date.

There remains only the question whether appellant's claim was barred by laches. Appellee relies on delay in its presentation and the death of McKnab as supporting this phase of the judgment. This court is not committed to the proposition that mere delay in asserting a right of action or the death of one of the parties prior to its assertion, even though the production of evidence may be affected thereby, are in and of themselves sufficient to defeat a cause of action otherwise valid and enforceable (*Osincup v. Henthorn*, 89 Kan. 58, 65, 130 Pac. 652). On the face of the record before us there is nothing to show intervention of the rights of third parties or other reasonable grounds for application of the doctrine.

The judgment is reversed.