Argued June 7, affirmed October 10, 1978

STOVALL, *Appellant,*
*v.*
PUBLISHERS PAPER CO. et al, *Respondents.*
(TC 36559, SC 25175)
584 P2d 1375

J. Christopher Minor, of Minor, Yeck & Beeson, P.C., Newport, argued the cause and filed the briefs for appellant.

Charles J. Pruitt, of Dezendorf, Spears, Lubersky & Campbell, Portland, argued the cause for respondents. With him on the brief was Laurence F. Janssen, of Dezendorf, Spears, Lubersky & Campbell, Portland.

Before Denecke, Chief Justice, and Tongue, Bryson and Linde, Justices.

TONGUE, J.

**TONGUE, J.**

This is a timber trespass case in which plaintiff appeals from the granting of defendants' motion for summary judgment. Plaintiff commenced the action under ORS 105.810, seeking treble damages for defendants' alleged unauthorized cutting of timber on plaintiff's land. Defendants admitted cutting the timber, but alleged as an affirmative defense that they were authorized to do so under a written "timber sale and logging agreement." In his reply plaintiff admitted that the contract at one time was in effect, but alleged that plaintiff had terminated the contract before defendants cut the timber.

Defendants then moved for summary judgment, contending that the purported termination was ineffective as a matter of law. The trial court agreed and granted the motion for summary judgment. Plaintiff appeals.

There is no dispute that if the contract remained in effect, defendants had a right to cut the timber and the granting of summary judgment in their favor was proper. The issue on appeal is whether the trial judge was correct in holding that the purported termination of the contract was ineffective as a matter of law.

The facts giving rise to this controversy are not in dispute. On January 12, 1973, plaintiff and defendants' predecessor, Cascadia Lumber Company (Cascadia), entered into a "timber sale and logging agreement" under which plaintiff agreed to sell and Cascadia agreed to buy the right to cut and remove timber from a tract of plaintiff's land in Lincoln County. Cascadia agreed to pay plaintiff $35,000 and, as "additional consideration," was to construct a road on plaintiff's property. Cascadia was granted the right to enter the land and remove the timber until December 31, 1975, when the contract would expire. The agreement also provided:

"11. If the Buyer defaults in the payment of any money due under this agreement or fails to perform or do

[ 55 ]

any act or thing required hereunder, * * * Seller may at his option terminate this agreement by notice to the Buyer and thereupon all rights of Buyer hereunder shall come to an end and it shall forthwith surrender all rights hereunder. * * *"

Defendant Publishers Paper Co. (Publishers) subsequently succeeded to Cascadia's rights and duties under the agreement. Difficulties developed between plaintiff and Publishers over the construction of the road. In his brief, plaintiff describes the situation:

"Prior to September, 1974, plaintiff became aware that he was very dissatisfied with the manner in which the road was being constructed and with the construction which had taken place thus far, believing that it did not meet the standards set forth in the contract. Much correspondence and several meetings with representatives of the defendant Publishers produced no satisfaction. In fact, representatives of defendant Publishers indicated that they did not intend to build a road in conformance with plaintiff's understanding of Publishers' obligations under the contract. Consequently, although hopes of an eventual settlement of the various and sundry disputes still lingered and the parties remained in contact, on May 19, 1975 in order to bring matters to a head, counsel for plaintiff sent a letter to one of the attorneys for defendant Publishers * * *."

It is upon this letter of May 19, 1975, that plaintiff relies to support his contention that the contract was terminated. Plaintiff does not contend that he gave any notice of termination *other than* this letter.

Defendants contend that plaintiff's letter of May 19, 1975, was legally ineffective to constitute a termination for two reasons: (1) It was not accompanied by an offer to return the consideration received by plaintiff under the contract, the tender of such consideration back to Publishers being a condition precedent to an effective termination;[1] and (2) the notice of termination was equivocal and must be found to be ineffective as a matter of law.

---

[1] By May 19, 1975, plaintiff had received the full $35,000 of the purchase price in cash, plus the value of the road that had been constructed.

If either of defendants' contentions is valid the contract was still in effect at the time the timber was cut and the trial judge was correct in granting defendants' motion for summary judgment. Defendants' second contention will be considered first.

■ As a general rule, one who desires to exercise his right to terminate or rescind a contract must first give the opposing party notice that he is doing so. 3 Black, On Rescission and Cancellation 1399, § 569 (2d ed 1929). This is particularly true where, as here, the contract itself provides that a party may terminate the contract "by notice." 3 Black, supra at 1409, § 572.

■ Further, a notice of the rescission or termination of a contract, to be effective as such, "must be clear and unambiguous, conveying an unquestionable purpose to insist on the rescission." 3 Black, *supra* at 1413, § 574. Black further states (at 1413-1414):

> "* * * And where the conduct of one having the right to rescind a contract is ambiguous, and it is not clear whether he has rescinded it or not, he will be deemed not to have done so."

In addition, according to Black (at 1414), a notice of recission must be not only unequivocal but unconditional.

These rules, as stated in Black, are supported by numerous court decisions. In *Warrick v. McKnab's Estate,* 164 Kan 78, 187 P2d 502 (1947), the Supreme Court of Kansas applied these principles in a case involving facts somewhat similar to those in this case. There a letter was claimed to constitute a notice of termination of a contract. The court analyzed the language of the letter and held, as a matter of law, that the letter was not sufficiently clear, definite and unequivocal to terminate the contract. For further statements and applications of the general rule, *see e.g., Thermo-Kinetic Corp. v. Allen,* 16 Ariz App 341, 493 P2d 508, 512 (1972); *Shaw v. Beall,* 70 Ariz 4, 215 P2d 233, 234-235 (1950); *Wright v. Bristol Patent Leather Co.,* 257 Pa 552, 101 A 844, 845 (1917);

*Maloney v. Madrid Motor Corp.,* 385 Pa 224, 122 A2d 694 (1956); *Pettit v. F. V. H. Collins Co.,* 112 Mont 12, 113 P2d 340, 341-342 (1941).

The sole notice of termination relied upon by plaintiff in the case at bar is the May 19, 1975 letter. As in *Warrick v. McKnab's Estate, supra,* this court must examine the language of this letter to determine whether it meets the legal standard set forth above for an effective termination.

The letter in question was written by plaintiff's attorney to the attorney for Publishers. The first two paragraphs of the letter read:

> "Your offer of compromise to Mr. Stovall [the plaintiff] setting forth a proposal for improvements to the road is not acceptable for a number of reasons. Likewise, the offer to purchase the property is unreasonably low and we would not be willing to sell at that price.

> "Accordingly, we have no alternative but to consider that Publishers has breached their contract by failure to complete the rough grading in accordance with the contract specifications, i.e., to a sufficient width, and additionally are guilty of an anticipatory breach by their statement to the effect that they feel that the road work has been satisfactorily completed and that they have no further obligation or intention of doing further work on the road. We are giving you notice herewith that pursuant to Paragraph 11 of the contract we are exercising Mr. Stovall's option to terminate the Timber Cutting Agreement and all rights thereunder of your client and of their predecessor in interest. The cutting of any timber will be considered willful trespass and treble damages will be sought under ORS 105.810."

The third paragraph, however, reads:

> "Mr. Stovall previously authorized me to go ahead with legal action on this, and I was prepared to file action several days ago and I am enclosing a copy of the complaint which has been prepared for filing. However, in the past several days Mr. Stovall and I have re-examined your letter and it would appear that in the

interest of compromise your client is offering to do substantially more than it has previously acknowledged to be its obligation; they are getting much closer to the type of road which Mr. Stovall's experts tell him he is entitled to and we thought that perhaps they would be willing to carry their compromise a little further and meet what we consider to be all of their obligations with respect to the road. Specifically, your compromise offer is inadequate in these respects: * * *"

There follows a list of five specific respects in which Publishers' "offer of compromise" was said to be inadequate. That list includes specific suggestions as to how defendants' offer should be modified to make it acceptable. One of the suggestions includes the statement that plaintiff "considers it part of Publishers' obligation" to build one particular portion of the road to the same standards as the rest.

Along the same lines, paragraph four states that:

"In addition, Mr. Stovall has been required to retain the services of an engineer and an attorney by reason of what he considers to be an unwarranted refusal by Publishers to meet the contractual obligations. As part of any compromise he would expect to be reimbursed for his out of pocket expenses incurred thus far not to exceed $1,500.00."

Finally, paragraphs five and six conclude the May 19th letter by stating:

"The foregoing is submitted in the interest of compromise and may be accepted by written notice actually received by me at any time prior to 4:45 p.m., Tuesday, May 27, 1975. We otherwise intend to file our complaint immediately thereafter.

"Also, I don't know if it would make any difference to your client, but Mr. Stovall indicated that if your client accepts the compromise offer and will be logging in the area, they might wish to know that he would be interested in selling to them the approximately 50 M board feet of timber on one of the adjoining parcels of land for a price of $5,000, which works out to be about $100/M."

[ 59 ]

Attached to the letter is a copy of an unfiled circuit court complaint bearing the caption "George Stovall v. Publishers Paper Co."[2]

■ Applying the principles of law discussed above to the language of this letter, we conclude that the notice of termination was not "clear and unambiguous, conveying an unquestionable purpose to insist on the rescission,"[3] and was therefore, as a matter of law, ineffective to terminate the contract.

If plaintiff had ended the letter after the second paragraph, we might reach a different conclusion. Paragraph one rejects what plaintiff characterizes as defendants' "offer of compromise." Paragraph two, in unequivocal language, states that plaintiff is exercising his right to terminate the contract, and that the cutting of any timber by Publishers will be considered willful trespass.

Paragraph three, however, resumes the "compromise" negotiations. Plaintiff states that he "*was* prepared" to file his complaint several days previously. *"However,"* plaintiff comments, he has "re-examined" Publishers' most recent letter. Plaintiff then informs

---

[2]The first cause of action of that complaint alleges that Publishers has breached the contract provision regarding the construction of the road, and states that by reason of such breach "seller [plaintiff] has notified buyer [Publishers] that he is exercising his option to terminate said agreement and therefore all rights of the buyer under said contract have come to an end and are surrendered hereunder." Plaintiff states that he brings the first cause of action "for declaratory relief under ORS Chapter 28 for the purpose of determining a question and actual controversy between the parties hereto, to-wit: the question of whether all rights of Defendant are terminated by reason of breach thereof as above set forth."

In his prayer, plaintiff prays:

"That a declaratory judgment be rendered and entered declaring and *adjudicating that the rights of PUBLISHERS PAPER COMPANY in and under the hereinabove mentioned contract for the purpose of cutting rights be and they hereby are ended and terminated* by reason of their material breach thereof." (Emphasis added)

Plaintiff also prays, in the alternative, for a judgment of $24,905 on his second cause of action for damages due to defendant's breach of contract in regard to the construction of the road.

[3]3 Black, On Rescission and Cancellation 1413, § 574 (2d ed 1929).

Publishers that its "offer to compromise" is "getting much closer to the type of road which Mr. Stovall's experts tell him he is entitled to and we thought they [Publishers] perhaps would be willing to carry their compromise a little further and *meet what we consider to be all of their obligations with respect to the road.*" The reference to Publishers' "obligations" conveys the impression that such obligations under the contract continue, rather than that they have ceased by reason of a termination of the contract.

Of more importance, paragraph five gives defendants one week to accept plaintiff's demands "in the interest of compromise." Plaintiff states that "[W]e otherwise intend to file our complaint immediately thereafter." This passage contributes to the ambiguity. Did plaintiff terminate the contract in paragraph two, or did plaintiff give Publishers one week in which to revise its "compromise offer," upon the condition that *otherwise* plaintiff would file his complaint and *at that time* terminate the contract?

The unfiled complaint attached to the letter adds to the confusion. On the one hand, it states that plaintiff "had notified" defendants that he is exercising his option to terminate and that defendants' rights "have come to an end." On the other hand, plaintiff asks the court to determine *"whether all rights of Defendant are terminated,"* and prays for a declaratory judgment that defendants' contract rights "be and they hereby are ended and terminated."

Finally, paragraph six, by using the words "if your client accepts the compromise offer and *will be logging in the area,*" also conveys the impression that the contract might not yet be terminated and that timber might in the future still be cut without subjecting Publishers to timber trespass charges.

As stated previously, a notice of termination, to be effective, must be clear and unambiguous. By mixing words of termination with words of compromise,

negotiations, and present obligation, the May 19th letter, when read as a whole, was ambiguous, and as a matter of law did not meet the requirements which must be satisfied for a legally effective notice of the termination of the contract.

It is also stated by Black, *supra,* 1413-1414, § 574 that:

> "* * * [W]here the conduct of one having the right to rescind a contract is ambiguous, and it is not clear whether he has rescinded it or not, he will be deemed not to have done so."

There is evidence in the record that the May 19th letter was treated by both parties not as a termination, but rather as a continuation of negotiations dating back to September of 1974. The "inadequacies" in Publishers' offer of compromise noted by plaintiff in the May 19th letter were not cured by Publishers by the May 27, 1975 deadline. The threatened complaint, however, was not filed. Instead, negotiations continued. Letters discussing the negotiations concerning the road passed between the parties on August 12, 19, 28, and September 8, 1975. Plaintiff's letter of September 8, in fact, stated in part:

> "It appears from your letter that you are offering, in the alternative, to *rescind the timber contract* in the consideration of Mr. Stovall paying to your client the sum of $10,750.00 and the reasonable value of the road as completed to date. *This will constitute our acceptance of your offer* * * *."[4] (Emphasis added)

We need not rely on the subsequent conduct of the parties, however, because we conclude that the notice of termination was legally ineffective due to the ambiguity of the May 19th letter itself.

■ Plaintiff contends that the discussion of what he characterizes as an "offer of compromise" in the letter of May 19th may not be considered to nullify the clear and specific notice of termination allegedly found in

---

[4]It should be noted that no resolution of the dispute resulted from these further negotiations.

paragraph two of that letter. In determining whether a notice of termination is clear and unambiguous, however, this court must consider the *entire* communication. Moreover, the negotiations for a possible "compromise," as discussed in the May 19th letter, were not "offers of compromise" of the kind generally held to be inadmissible on the issue of liability. In any event, the letter of May 19th, including its discussion of compromise, was attached as an exhibit to defendants' motion for summary judgment, and plaintiff made no objection to consideration by the trial court of those portions of that exhibit.

■  Plaintiff also contends that the question of whether he intended by his letter of May 19th to terminate the contract is a question of fact that should be left to the jury. The *intent* of plaintiff, however, is not the issue. The real question is whether his notice to terminate the contract satisfied the legal standard that it be clear, unequivocal and unambiguous. Where the facts are undisputed, as in a case involving a letter (such as this case), this is a question to be decided by the court.[5]

For the reasons given, we conclude that as a matter of law the notice of termination was not clear and unambiguous, and was therefore insufficient to terminate the contract between plaintiff and defendant Publishers. For this reason, the cutting of timber by

---

[5] We have not overlooked plaintiff's contention that "defendants have judicially acknowledged that plaintiff *intended* to terminate the contract." The basis for that contention, however, is a statement by defendants' attorney at the time of argument on the motion for summary judgment that "we don't deny that he *purported* in May of 1975 to terminate the contract." On the other hand, in plaintiff's affidavit in opposition to the motion for summary judgment plaintiff stated, under oath, that "[i]t was my intent that such termination be final and absolute *unless* a satisfactory settlement of our differences could be reached with Publishers," which was perhaps a clearer judicial admission by plaintiff that the letter of May 19th was not intended to terminate the contract as of that date.

In any event, as previously stated, the controlling issue to be decided under the facts of this case is not plaintiff's intent, but whether, as a matter of law, the letter of May 19th satisfied the legal requirements that a notice to terminate such a contract must be clear, unequivocal and unambiguous. Cf. *Bitting v. Douglas County,* 24 Or 406, 410, 33 P 981 (1893).

defendants was not wrongful, and the trial judge was correct in granting defendants' motion for summary judgment.

Because of our disposition of this issue, we need not reach the question of whether plaintiff was required to tender the consideration he received under the contract back to Publishers as a condition precedent to an effective termination under the contract provision relating to termination.

Affirmed.