Argued and submitted March 13, reversed and remanded April 19, 1995

Larry R. PHILLIPS,
dba Phillips Construction,
*Appellant,*

*v.*

John R. GIBSON
and Gail Gibson,
husband and wife,
*Respondents.*

(91-CV-0258-ST; CA A83710)

893 P2d 574

Gerald A. Martin argued the cause for appellant. With him on the brief was Francis & Martin.

Gregory P. Lynch argued the cause for respondents. With him on the brief were Stanley D. Austin and Holmes, Hurley, Bryant, Lovlien & Lynch.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

**LEESON, J.**

Plaintiff brought this action for lost profits on a construction contract allegedly breached by defendants. The trial court, sitting without a jury, concluded that the contract had been rescinded and dismissed all claims.[1] Plaintiff appeals. We review for errors of law, and reverse.

Plaintiff, a licensed building contractor, entered into a contract with defendants on August 15, 1990, to construct a residence for them. Plaintiff also orally agreed to assist defendants in obtaining financing by cooperating with defendants' lender. Under the terms of the contract, defendants made a $10,000 deposit and plaintiff began site preparation work. On September 12, 1990, the lender required plaintiff to sign a "Guaranty of Completion and Performance" as a condition of releasing loan funds to defendants. The guaranty would have obligated plaintiff to cure any loan default by defendants and to complete the project at plaintiff's sole expense. Plaintiff had never before been asked to sign such a document and, after consulting with an attorney, refused to sign. Defendants subsequently ordered plaintiff to cease work, because plaintiff's refusal to sign the guaranty prevented defendants from receiving the loan.

On September 26, 1990, plaintiff sent defendants a written accounting of the $10,000 deposit and a mutual release. Plaintiff calculated that defendants were entitled to a refund of $4,221.63, after subtracting expenses and the 15 percent commission specified in the contract. Defendants refused to sign the release and threatened to sue plaintiff for breach of contract because he would not sign the guaranty required by the lender. Defendants then brought before the Construction Contractors Board a claim for damages against plaintiff.[2] ORS 701.140. On October 16, plaintiff hand delivered to defendants a letter prepared by plaintiff's attorney, accompanied by a check and defendants' blueprints and

---

[1] No evidence was presented to the trial court on plaintiff's other claim and defendants' counterclaim and they are not before us on appeal.

[2] Although that claim is not part of the trial court record, testimony indicates that defendants sought repayment of $4,290 spent by plaintiff for excavation and fill services that defendants alleged were unnecessary and for return of defendants' blueprints and building permits.

building permits. The letter recalculated the refund defendants were entitled to receive, increasing the amount to $5,115.33 by waiving plaintiff's commission under the contract, and offered defendants two options:

> "If you want [plaintiff] to build [the house], sign below, to indicate that you reinstate the original contract, and your account will stand as shown in his letter to you dated September 26, 1990. If you reinstate the contract, on October 31, he will bill you for this amount and for any additional sums due under the contract for work done during October.
>
> "* * * * *
>
> "If you do not want [plaintiff] to build the house, just negotiate his refund check and keep the building permit and blue prints, and that will be the end of the transaction, including your right to sue him for damages for any act or omission so far."

Defendants cashed the check, but did not withdraw their claim against plaintiff before the Construction Contractors Board. Plaintiff subsequently filed this breach of contract action in Deschutes County Circuit Court.[3]

The trial court found that plaintiff's refusal to sign the lender's guaranty was reasonable, because the uncontroverted testimony that the guaranty was not standard in the industry meant that plaintiff could not have anticipated that his promise to cooperate with defendants' lender would involve such a request. Although it concluded that defendants' repudiation of the contract by ordering plaintiff to cease work was a material breach, the trial court nonetheless held that plaintiff had rescinded the contract and was precluded from seeking damages under it. The sole issue on appeal is whether the contract was rescinded.

Defendants assert that the trial court made a factual finding that both parties intended to rescind the contract and, therefore, it must be upheld if there is any evidence to support it. *Saga Enterprises, Inc. v. Coldwell, Banker and Co.*, 287 Or 169, 180, 598 P2d 285 (1979). However, the "any evidence" standard does not apply where, as here, the historical facts are undisputed and the trial court's ruling involved the

---

[3] According to plaintiff, the Construction Contractors Board proceeding was "halted" when he filed suit. ORS 701.145(2)(a).

application of the law to the communications between the parties. *Bollenback v. Continental Casualty Co.*, 243 Or 498, 510, 414 P2d 802 (1966). Intent to rescind is not the issue; the real question is whether plaintiff's actions met the legal standard for rescission. *Stovall v. Publishers Paper Co.*, 284 Or 53, 63, 584 P2d 1375 (1978).

■■ When one party to a contract has repudiated it, the other party may choose between the alternative remedies of accepting rescission and seeking restitution or bringing an action for damages. *Bollenback*, 243 Or at 506; *Durflinger v. Statesman Life Ins. Co.*, 100 Or App 581, 584, 787 P2d 892 (1990). Defendants argue that plaintiff accepted rescission by offering a check for the unspent balance of their deposit. Plaintiff contends that his letter of October 16 was merely an offer to rescind that was not accepted by defendants because they chose to continue their claim before the Construction Contractors Board. According to plaintiff, rescission of a contract is the creation of a new contract, which is accomplished only by mutual agreement of both parties, *McGrath v. Electrical Const. Co.*, 230 Or 295, 305, 364 P2d 604, 370 P2d 231 (1961), and, because there was no mutual agreement in this case, there was no rescission.

A party who wishes to exercise the right to rescind must give the other party notice that unequivocally and unconditionally conveys the intent to insist on the rescission. *Stovall*, 284 Or at 57. If that standard is not met, as a matter of law, the party has not rescinded. *Id.*

Plaintiff's October 16 letter states:

"By way of a *settlement offer, expiring 10 days after your receipt* of this letter, [plaintiff] will agree to waive compensation to himself for any of the work done so far. Together with this letter, he *offers* you the blueprints and building permits for your house, and the refund computed below. *If you cash the refund check*, or accept the blueprints and building permits, *he will consider that you have rescinded* the construction contract *and will not hold him responsible* for building the house, having taken back items essential for his performance of the contract." (Emphasis supplied.)

The refund check was labeled "For Contract Settlement." The letter also offered defendants the chance to "reinstate the contract." By mixing words of rescission with words of

settlement and compromise, and by allowing the option to continue performance under the contract, plaintiff's letter did not, as a matter of law, meet the requirements for a legally effective notice of rescission. *Stovall*, 284 Or at 61-62. The October 16 letter was an offer by plaintiff to rescind the construction contract. That offer specified that rescission, to be accepted by defendants' negotiation of the check, was conditioned on defendants' waiver of their "right to sue [plaintiff] for damages for any act or omission so far." Defendants negotiated plaintiff's check and retained the blueprints and building permits, but continued to pursue their claim for damages before the Construction Contractors Board.[4] Mutual rescission, like the formation of any contract, requires the assent of both parties and a meeting of their minds. *McGrath*, 230 Or at 305. By their actions, defendants demonstrated that they did not agree with plaintiff's proposed terms. Therefore, there was no rescission and plaintiff's action for breach was not precluded.

Reversed and remanded.

---

[4] ORS 701.140, which describes the types of claims that can be brought before the Construction Contractors Board, provides, in part:

"The board shall only accept and make determination of the following types of claims:

"(1) Claims against a contractor by the owner of a residential structure or other real property for the following in performing any work subject to this chapter:

"(a) Negligent work.

"(b) Improper work.

"(c) Breach of contract."