2009 UT 80

**Endré GLENN and Margret Glenn, Plaintiffs and Appellants,**

v.

**Robin REESE and Judith Reese, Defendants and Appellees.**

No. 20080861.

Supreme Court of Utah.

Dec. 11, 2009.

Rehearing Denied Feb. 18, 2010.

Jason K. Nelsen, Salt Lake City, for plaintiffs.

Karra J. Porter, Salt Lake City, for defendants.

## INTRODUCTION

DURHAM, Chief Justice:

¶ 1 This action stems from a Real Estate Purchase Contract (REPC) executed between Robin and Judith Reese (Buyers) and Endré and Margret Glenn (Sellers) in December 2007. We are asked to determine if the district court erred in refusing to grant summary judgment for the Sellers because the REPC is ambiguous and cannot be interpreted as a matter of law. Specifically, we must decide whether the REPC affords Buyers a means to cancel the REPC because of an appraisal below the purchase price listed in the REPC. Sellers argue that, though the REPC is unambiguous, it only permits cancellation based on an appraisal obtained by a lender. Buyers argue that the REPC allows them to request and obtain their own appraisal and cancel the REPC based on their dissatisfaction with that appraisal.

¶ 2 We hold that the REPC is unambiguous and is broad enough to allow cancellation based on an unsatisfactory appraisal obtained by Buyers. Because of this holding, we must also decide if Buyers complied with the REPC's cancellation procedure when they submitted to Sellers two addenda to the REPC. We conclude that Buyers did not breach the REPC and are entitled to summary judgment. We therefore remand to the district court for entry of summary judgment and an award of attorney fees in favor of Buyers.

## BACKGROUND

¶ 3 On December 19, 2007, Buyers offered to purchase Sellers' home (the Property) for $540,000. After some negotiation, the parties executed a REPC. The REPC indicates that Buyers would finance the purchase with $410,000 in cash and $130,000 in a conventional loan from a lender. The REPC also includes two provisions regarding conditions based on an appraisal or evaluation of the Property. First, Section 2.4 of the REPC contains an "Appraisal Condition" that allows Buyers to cancel the REPC if the Property appraises for less than the purchase price. Section 2.4 reads:

2.4 **Appraisal Condition.** Buyer's obligation to purchase the Property is conditioned upon the Property appraising for not less than the Purchase Price. This condition is referred to as the "Appraisal Condition." If the Appraisal Condition applies and the Buyer receives written notice from the Lender that the Property has appraised for less than the Purchase Price (a "Notice of Appraised Value"), Buyer may cancel this contract by providing a copy of such written notice to Seller no later than three days after Buyer's receipt of such written notice.

Second, Section 8 conditions Buyers' obligation to purchase the Property upon approval of certain evaluations, including a physical condition inspection and the availability of homeowner's insurance. Specifically, Section 8(e) conditions purchase upon "[a]ny other [test or evaluation] deemed necessary by buyers." In the event that Buyers are dissatisfied with one of these evaluations, Section 8.2 provides that Buyers may submit to Sellers either a notice of intent to cancel or a written notice of objections. If Buyers submit a notice of objections, Section 8.4 grants the parties seven calendar days (the Response Period) to resolve these objections. If the parties fail to agree on a method to resolve these objections, Buyer may then cancel the REPC within three days after the Response Period expires.

¶ 4 On December 27, 2007, Buyers' agent engaged JMS Group Appraising to conduct an appraisal of the Property. The appraisal placed the value of the Property at $80,000 below the purchase price. Because Buyers estimated they could pay cash for the Property if priced at this lower value, they neither applied nor received a loan from a lender. After receiving the appraisal on December 28, 2007, Buyers, through their agent, sent Addendum No. 3 to Sellers on the same day. Addendum No. 3 stated:

1. Purchase price to be $460,000 per appraised value.

2. If seller does not agree to the new purchase price contract will be canceled.

[3]. Earnest Money to be returned to Buyers.

The Addendum gave Sellers until 6:00 p.m. on the following day to accept. Sellers did nothing. After the deadline passed without an answer from Sellers, Buyers submitted Addendum No. 4 on December 31, 2007, which stated:

1. Seller has failed to respond to addendum # 3. Buyers are canceling this contract based upon the appraised value coming in at 460,000 and the seller not accepting the value as the purchase price.

2. Earnest money of $5000.00 to be released to Buyers.

Though Sellers did not sign Addendum No. 4, Sellers' broker placed the Property back on the market on January 2, 2008 and sent an Earnest Money Release Form to Buyers' agent on January 4, 2008.

¶ 5 In March 2008, Sellers filed a complaint against Buyers, which was later amended. In the amended complaint, Sellers asserted causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing, and sought specific performance of the REPC as their sole remedy. Both parties filed motions for summary judgment. The district court, at oral argument, denied both motions on the ground that the REPC was ambiguous. Sellers filed a petition for permission to appeal from an interlocutory order, pursuant to Rule 5 of the Utah Rules of Appellate Procedure, contesting the district court's denial of their motion for summary judgment. We granted the petition and have jurisdiction over this interlocutory appeal pursuant to Utah Code section 78A–3–102(3)(j) (2008).

## STANDARD OF REVIEW

¶ 6 The propriety of a grant or denial of summary judgment is a question of law, which we review for correctness. *R & R Indus. Park, L.L.C. v. Utah Prop. & Cas. Ins. Guar. Ass'n*, 2008 UT 80, ¶ 18, 199 P.3d 917. In doing so, we view "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Id.* (quoting *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600).

## ANALYSIS

¶ 7 The issue presented in this case is whether the district court erred in denying summary judgment on the basis that the REPC is ambiguous. If we conclude the REPC is unambiguous, we may interpret it as a matter of law and then must determine if Section 2.4 of the REPC contains Buyers' only means of cancellation for an appraisal below the purchase price or if Section 8's "other evaluations" is broad enough to allow such a cancellation. Furthermore, we must determine how or if Addendum No. 3 and Addendum No. 4 effected either of these sections. Sellers concede that if the REPC can be interpreted as a matter of law it may be interpreted in favor of Buyers.

¶ 8 We hold that the REPC is unambiguous and can be interpreted as a matter of law because "other evaluations" under Section 8 includes an appraisal procured by a buyer. We also hold that Addendum No. 3 to the REPC is an offer to modify the REPC, which became a nullity upon Sellers' refusal to accept. Thus, Buyers' Addendum No. 4 successfully cancelled the REPC.

## I. THE REPC IS UNAMBIGUOUS AND CAN BE INTERPRETED AS A MATTER OF LAW

¶ 9 Both Sellers and Buyers argue that the REPC is unambiguous. Specifically, Sellers contend that Section 2.4 contains Buyers' only avenue for cancellation upon receipt of the appraisal below the purchase price and that Section 8 cannot be read to allow cancellation for the unfavorable appraisal. In contrast, Buyers assert that Section 2.4 and Section 8 are mutually exclusive. They argue that Section 2.4 applies only to cancellations based on an appraisal obtained by a lender and Section 8 applies to cancellations based on appraisal obtained by a self-financed buyer.

¶ 10 Well-accepted rules of contract interpretation require that we examine the language of a contract to determine meaning and intent. *Café Rio, Inc. v. Larkin–Gifford–Overton, LLC*, 2009 UT 27, ¶ 25, 207 P.3d 1235. Where the language is unambiguous, "the parties' intentions are determined

from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Id.* (internal quotation marks omitted). We will also "consider each contract provision ... in relation to all of the others, with a view toward giving effect to all and ignoring none." *Id.* (ellipses in original) (internal quotation marks omitted). The court considers extrinsic evidence of the parties' intent only if the language of the contract is ambiguous. *Id.* A contractual term or provision is ambiguous "if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Id.* (internal quotation marks omitted). When determining whether the plain language is ambiguous, "we attempt to harmonize all of the contract's provisions and all of its terms." *Cent. Fla. Invs., Inc. v. Parkwest Assocs.,* 2002 UT 3, ¶ 12, 40 P.3d 599.

¶ 11 Though Sellers argue that Section 2.4 provides Buyers' only means of cancellation due to an appraisal less than the purchase price, a plain reading of the language in Section 2.4 and Section 8 indicates otherwise. Section 2.4 clearly delineates the method for cancellation based on an unsatisfactory appraisal obtained by a lender. First, a lender must request an appraisal and provide a written notice to the buyer indicating that the property appraised for less than the purchase price. Then, if the buyer wishes to cancel, she must provide a copy of the written appraisal notice to the seller within three days. Thus, it is clear that a party without a lender cannot comply with this provision because it cannot obtain the requisite appraisal notice.

¶ 12 In this case, Buyers did not comply with Section 2.4 because they did not have a lender. After the home appraised at $80,000 below the purchase price, Buyers felt they could afford to pay the lower appraised value of the home without resorting to a lender. Therefore, they did not apply for a loan, and no lender requested an appraisal on their behalf. Sellers would have us hold that because Buyers did not comply with Section 2.4, no other section of the REPC grants them the right to cancel the contract upon receipt of the unfavorable appraisal. We disagree.

¶ 13 We hold that the evaluation provision in Section 8 is broad enough to encompass an appraisal obtained by a self-financed buyer. Section 8 reads:

Buyer's obligation to purchase under this Contract:

(a) IS conditioned upon Buyer's approval of the content of all the Seller Disclosures referenced in Section 7;

(b) IS conditioned upon Buyer's approval of a physical condition inspection of the Property;

. . .

(d) IS conditioned upon Buyer's approval of the cost, terms and availability of homeowner's insurance coverage for the Property;

(e) IS conditioned upon Buyer's approval of the following tests and evaluations of the Property: (specify) *Any other deemed necessary by buyers.*

Under this language, the question is whether an appraisal qualifies as a type of "test" or "evaluation" deemed necessary by the buyer. In its common and ordinary usage, "appraise" means "[t]o determine the value of" or "[t]o estimate the worth or features of." *Webster's II New College Dictionary* 55 (1995). Additionally, "evaluate" means "[t]o determine or fix the value of" or "[t]o examine carefully." *Id.* at 388. Furthermore, "appraise" is a synonym in the definition of "evaluate." *Id.* It is clear that the plain meanings of these terms are so similar as to be used interchangeably without confusion. Thus, an appraisal is an evaluation under Section 8.

■ ¶ 14 Accordingly, because Section 8 gives a buyer the contractual right to obtain an appraisal, a buyer also has the corresponding right to cancel the REPC upon dissatisfaction with the appraised value. The language in Section 8 is clearly sufficient to treat an appraisal as an evaluation and to allow a cancellation based on the unsatisfactory appraisal.[1]

1. To contradict this plain language, Sellers would have us apply two rules of construction;

¶ 15 Despite this reasonable interpretation, Sellers maintain that an appraisal is not a type of evaluation contemplated by Section 8. But Sellers' interpretation would compel us to ignore the plain language of the contract. We decline to do this. As such, under Section 8, the Buyers had the right to request an appraisal and cancel the REPC upon dissatisfaction with that appraisal. Any other interpretation would require a strained reading and judicial contortion exceeding the bounds of reason. Furthermore, this interpretation allows each provision to have effect and does not produce absurd or harsh results.

¶ 16 Because the plain language of the contract allows no other reasonable interpretation, we hold that the REPC is unambiguous and can be interpreted as a matter of law. Furthermore, we hold that the REPC affords Buyers two opportunities to cancel the contract based on an unfavorable appraisal: (1) when the appraisal is obtained by a third-party lender as described in Section 2.4; or (2) when the appraisal is obtained by the buyer as described in Section 8. Because Section 2.4 does not govern the appraisal here, Buyers were not required to submit a written notice of appraisal value to Sellers to cancel the contract.[2]

## II. ADDENDUM NO. 3 OPERATED AS AN OFFER TO MODIFY THE CONTRACT AND BECAME A NULLITY UPON EXPIRATION OF THE TIME PERIOD LISTED

¶ 17 Sellers argue that even if Section 8 of the REPC allows Buyers to cancel upon receipt of an unsatisfactory appraisal,

Buyers failed to comply with the requirements of Section 8. Specifically, Sellers assert that Buyers had only two options if they found any inspection or evaluation unacceptable: (1) cancel the REPC through a written notice of cancellation; or (2) provide Sellers with a written notice of objections, which would have triggered a seven-day period that allowed Sellers to respond before Buyers could cancel. Sellers further claim that Addendum No. 3 cannot operate as a cancellation because it is not clear and unequivocal. Therefore, according to Sellers, Addendum No. 3 could operate only as a notice of objections and there was consequently a breach of the REPC when Buyers prematurely submitted the unequivocal cancellation in Addendum No. 4. In contrast, Buyers argue that Addendum No. 3 was an offer to renegotiate that became inoperable upon Sellers' failure to assent.

¶ 18 We agree with Buyers; Addendum No. 3 operated as neither a cancellation nor a written notice of objections. Instead, it was an offer to modify the contract and became a nullity upon refusal. Hence, the original terms of the contract remained in force until Buyers cancelled the REPC by submitting Addendum No. 4 to Sellers.

¶ 19 It is generally accepted that a notice of termination or cancellation of a contract must be clear and unequivocal. 17B C.J.S. *Contracts* § 446 (2009); *see Gray v. Bicknell,* 86 F.3d 1472, 1479 (8th Cir.1996) (applying Missouri law); *Morris Silverman Mgmt. Corp. v. W. Union Fin. Servs., Inc.,* 284 F.Supp.2d 964, 974 (N.D.Ill.2003); *In re*

---

neither changes the outcome. Sellers argue that the rule of ejusdem generis alters the analysis because the general term "evaluations" must be interpreted to refer to evaluations and inspections similar to those types specifically listed in Section 8. *See Café Rio, Inc. v. Larkin–Gifford–Overton, LLC,* 2009 UT 27, ¶ 25, 207 P.3d 1235. But application of this rule shows that an appraisal, as an "evaluation," is similar to the evaluations and inspections specifically enumerated, namely, "a physical condition inspection of the Property" and "a survey of the Property." Therefore, this rule of construction bolsters our conclusion. Nor are we convinced by Sellers' argument that the specific provision of Section 2.4 governs the general provision of Section 8. Even if the appraisal condition of Section 2.4 is more specific than the appraisal condition of

Section 8, Section 2.4 states that "[c]ancellation pursuant to the provisions of any other section of this Contract shall be governed by such other provisions." Consequently, Section 2.4 allows other provisions, regardless of specificity, to govern.

2. We note that this debate about cancellation based on an appraisal has largely been resolved by the newly revised, state approved REPC form. The revision eliminates Section 2.4 and provides an appraisal condition in Section 8 that allows the buyer to cancel the REPC upon notice from a lender or directly from an appraiser that the property has appraised for less than the purchase price.

*Greater Se. Cmty. Hosp. Found., Inc.*, 267 B.R. 7, 18 (Bankr.D.C.2001); *Stovall v. Publishers Paper Co.*, 284 Or. 53, 584 P.2d 1375, 1377–78 (1978); *Accu–Weather, Inc. v. Prospect Commc'ns, Inc.*, 435 Pa.Super. 93, 644 A.2d 1251, 1254 (1994). Furthermore, "a notice of rescission must be not only unequivocal but unconditional." *Stovall*, 584 P.2d at 1378. The focus of any inquiry into the adequacy of cancellation "is on whether the notice is sufficiently clear to apprise the other party of the action being taken." *LA–Nevada Transit Co. v. Marathon Oil Co.*, 985 F.2d 797, 800 (5th Cir.1993). Furthermore, conduct of the parties may be considered to determine if a clear and unequivocal cancellation has occurred. *Morris Silverman*, 284 F.Supp.2d at 974. "Ambiguous conduct and language intended to signal contract termination will be deemed not to have terminated the contract." *Accu–Weather*, 644 A.2d at 1254 (internal quotation marks omitted). Though we have yet to recognize these principles, neither we nor the parties have found any case law indicating that Utah should not follow these general rules.

¶ 20 The inclusion of negotiation language in Addendum No. 3 and the conduct of the parties following its delivery illustrate that Addendum No. 3 was not a clear and unequivocal cancellation of the REPC. First, in Addendum No. 3, Buyers communicated their willingness to negotiate as well as their interest in cancellation. The commingling of a wish to cancel with a desire to negotiate and save the contract cannot be seen as an unequivocal notice of cancellation. *Stovall*, 584 P.2d at 1380 ("By mixing words of termination with words of compromise, negotiations, and present obligation, the . . . [written instrument], when read as a whole, was ambiguous, and as a matter of law did not meet the requirements which must be satisfied for a legally effective notice of the termination of the contract."). If Sellers had chosen to engage in such negotiations, Addendum No. 3 would not have operated to cancel the contract.

¶ 21 Moreover, Buyers' submission of Addendum No. 4 and Sellers' release of the earnest money after receipt of Addendum No. 4 illustrate that neither party considered the REPC cancelled after Addendum No. 3. If Sellers had considered the contract cancelled after Addendum No. 3 the earnest money should have been returned following the expiration of the negotiation period specified in Addendum No. 3. Similarly, if Buyers had considered Addendum No. 3 sufficient to cancel the REPC as well as their obligations under it, they would not have felt the need to transmit Addendum No. 4. Both parties' conduct after the submission of Addendum No. 3 illustrates that neither considered Addendum No. 3 sufficient to cancel the REPC. Accordingly, we agree with Sellers that Addendum No. 3 is not a clear and unequivocal intent to cancel.

¶ 22 However, we do not agree with Sellers' argument that Addendum No. 3, if not a cancellation, must be a notice of objections. While Section 8.2 gives Buyers the right to cancel or submit a notice of objections upon an unsatisfactory evaluation, nothing in the contract prevented Buyers from taking an altogether different course of action. In this case, Buyers attempted to renegotiate.

¶ 23 Parties to a written contract have the right to modify, waive, or make new contractual terms. *Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 34, 1 P.3d 1095. This is true even despite the presence of "express contractual language to the contrary." *Id.; see also Rapp v. Mountain States Tel. & Tel. Co.*, 606 P.2d 1189, 1191 (Utah 1980) ("It is well-settled law that the parties to a contract may, by mutual consent, alter all or any portion of that contract by agreeing upon a modification thereof."); *Cheney v. Rucker*, 14 Utah 2d 205, 381 P.2d 86, 89 (1963) ("It is fundamental that where parties have rights under an existing contract they have exactly the same power to renegotiate terms . . . as they had to make the contract in the first place."). This right to renegotiate was illustrated in an analogous case, *Scott v. Majors*, 1999 UT App 139, 980 P.2d 214.

¶ 24 In *Scott*, the trial court ordered the seller to sell her property according to the terms of a REPC, but deferred ruling on attorney fees, costs and damages. *Id.* ¶ 2. In an attempt to negotiate these costs and fees, the buyer asked the seller to sign a

mutual release agreement providing for $5,000 to the buyer as costs, damages, and attorney fees. *Id.* ¶ 3. The seller refused to agree and, in a subsequent appeal, argued that the buyer repudiated the contract by conditioning his performance of the REPC on her consent to the mutual release agreement. *Id.* ¶ 17. The court held that the proposal "was an offer to modify the original contract which [the seller] rejected, leaving the original contract in full force." *Id.* ¶ 18.

¶ 25 We agree with this reasoning. Rather than a written notice of objections, Addendum No. 3 was an offer to modify and thus an attempt to renegotiate a contract term. This is evidenced by the language of Addendum No. 3, which reads, in part:

> Seller shall have until 6:00 PM Mountain Time on December 29, 2007 to accept the terms of this ADDENDUM in accordance with the provisions of Section 23 of the REPC. Unless so accepted, the offer as set forth in this ADDENDUM shall lapse.

Section 23 of the REPC reads:

> **ACCEPTANCE.** "Acceptance" occurs when Seller or Buyer, responding to an offer or counteroffer of the other: (a) signs the offer or counteroffer where noted to indicate acceptance; and (b) communicates to the other party or to the other party's agent that the offer or counteroffer has been signed as required.

Because Sellers did not sign the addendum, they failed to accept the offer to modify. Consequently, the offer lapsed and never became part of the contract.

¶ 26 We hold that Addendum No. 3 was neither a cancellation nor a written notice of objections, but an offer to modify that became a nullity. Buyers therefore retained the right to cancel based on an unsatisfactory evaluation under the REPC until January 5, 2008, the Evaluations & Inspections Deadline. Buyers' submission of Addendum No. 4, an unequivocal notice of intent to cancel, to Sellers on December 31, 2007, complied with Section 8.2 and thus cancelled the REPC and all Buyers' obligations thereunder.

## CONCLUSION

¶ 27 We conclude that the REPC is unambiguous and can be interpreted as a matter of law. Furthermore, we hold that Section 8 of the REPC is broad enough to include an appraisal obtained by a self-financed buyer. Also, we hold that Addendum No. 3 was an offer to modify the contract that became a nullity upon Seller's refusal to accept. Addendum No. 4 was sufficient to cancel the REPC. We therefore remand to the district court for entry of summary judgment and an award of attorney fees in favor of Buyers.

¶ 28 Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM'S opinion.

¶ 29 Having disqualified himself, Associate Chief Justice DURRANT does not participate herein.